Mr. Justice Wylie
delivered the opinion of the court.
On the 5th of February last these three defendants were indicted on a charge of murder. On the same day they were arraigned and pleaded not guilty. The court sat for the trial of the case on the 9th of February, and on that day eight jurors were secured and sworn in. On the next day, the 10th of February, the jury was completed and the trial proceeded with; it lasted the rest of the month, and on the *162 1st of March the jury brought in a verdict of guilty as to alL
The case has been heard upon a large number of exceptions, covering a large variety of questions.
The first exception, after setting out the indictment,, proceeds as follows:
“ Upon which said indictment the district attorney proposed that the said defendants should be ai’raigned, whereupon they objected to such arraignment, because they had not two. entire days before that time been served with a copy of the indictment, numbered 13,282, which objection the court, overruled, and they were arraigned accordingly, to which ruling of the court the defendants then and there excepted,”' &c.
The act of Congress on this subject, section 1033, Revised Statutes, U. S., is in these words:
“ When any person is indicted of ti’eason, a copy of the indictment and a list of the jury, and of the witnesses to be produced on the trial for proving the indictment, stating the place of abode of each juror and witness, shall be delivered to him at least three entire days before he is tried for the same. When any person is indicted of any other capital offense such copy of the indictment and list of jurors and witnesses shall be delivered to him at least two entire days before the trial.”
This statute is the only law we have upon the subject. In this case it seems by the record that on the day the indictment was found, which was the 5th of February, the prisoners were arraigned and pleaded not guilty. They were-not again brought into court until the 9th of February, when the making up of the jury began, but was not completed until the next day, the 10th, and the first question which we are called upon to decide is whether the defendants had had delivered to them a copy of the indictment and a list of the jurors and witnesses two entire days before the trial began.
These lists were delivered to them on the 5th of February, the day of their arraignment. Under the English statute *163 of 7th William III, chapter 3, the courts of England have decided that the prisoner was entitled to a copy of the indictment before his arraignment, and if that were-the law in this country the defendants were not served in time. But the language of that statute is very different-from ours. In the first section of the statute of William III, it is there declared that all persons indicted for treason or misprision “ shall have a true copy of the whole indictment, but not of the names of the witnesses, delivered unto-them or any of them five days at the least before he or they shall be tried for the same, whereby to enable them and any of them, respectively, to advise with counsel thereupon to plead and make their defense,” &c.
Under that statute the English courts have held that as the copy of the indictment was to be served upon the prisoner five days before the trial, “ whereby to enable him to advise with counsel thereupon to plead and make his defense,” the copy must be served five days before the indictment. But our statute contains no such provision. It simply declares that a copy of the indictment and of the jurors and of the witnesses shall be served two entire days before the trial.
In the case of the United States vs. Curtis, 4 Mason’s Beports, 232, the court (Judge Story) was perfectly clear that it was sufficient if the copy was delivered two days before the cause is tried by the jury, and not before the party is arraigned on the indictment. It is very true that Judge Taney in another case decided otherwise. He held, agreeably to the decisions of the English courts under their statute, that the copy of the indictment ought to be served two days before the arraignment. In the conflict between these two high authorities the court is left to its own best judgment, and as the language of the statute seems to be plain, we must hold that the service of these copies was in time, having been made two days before the trial, and the trial does not begin until the jury is completed and sworn, which in this case was on the 10th of February. We see no error, therefore, in the ruling of the court below upon this point.
*164 In regard to the second exception, it seems that on the 2d of February, only three days before the finding of the indictment, upon'which the defendants were tried, a prior indictment (No. 18,263) had been found against them for the same crime. To this indictment they had on the same day — the 2d day of February — been arraigned and had pleaded not guilty, with which plea issue had been joined by ■•the Government.. The district attorney, however, without ■pi’oceeding upon that indictment, had a new one found — the ■one upon which they were tried. When they were called upon ■to plead to this last indictment, they objected, as the exception sets out, “ to being compelled to plead to said second indictment, and to proceed to trial thereon until the issue joined on the said indictment numbered 13,268 was disposed of, which objection was by the court overruled, and the defendants were required to plead to said second indictment, ■and to proceed to trial thereon, and did plead not guilty thereon, to which ruling of the court the defendants 'excepted,” &c.
We see nothing in this exception on which to grant a new trial. In the case of John Swan and Elizabeth Jeffries, reported in Foster’s Crown Law, 104, the objection was made that a prior indictment had been found against the defendants. But the court overruled the objection, saying; “The court is of opinion that the charge in the bill last found must be answered notwithstanding the pendency of the former, for auterfois arraign is no plea in this case. Perhaps the bill last found is better adapted to the nature of the case than the former, and the king’s counsel must be at liberty to prosecute in such manner as may best answer the ends of public justice. But at the same time the court must take care that the prisoners be not exposed to the inconvenience of undergoing two trials for one and the same fact.”
This principle seems to us to be applicable to the present case and to be conclusive against this exception, and it is accordingly overruled. The court will take care that the prisoners be not exposed to the jeopardy of two trials for one and the same fact.
*165 The third exception is based upon the refusal of the court to grant a motion that the counsel for the government should be required to elect on which particular count of the indictment they would proceed to trial. The indictment in this case contained six counts. The first, second and sixth charging the killing with a stone; the third and fourth charging the killing by kicking and beating, and the fifth charges the killing by instruments unknown. We are of opinion that there was no ground for such a motion. ■ Where an indictment contains several counts, the prosecution will not be compelled to elect on which count they will ask conviction. State v. Canterbury, 8 Foster’s New Hampshire Reports, 195; Archbold’s Criminal Pleading (Pomeroy’s 8th edition), 292, where in the latter authority it is said there is no objection to stating the same offence in different ways, in as many different counts of the indictment as you may think necessary, even although the judgment on the several counts be different, provided all the counts be for felonies or all for misdemeanors.
The fourth exception, which is of more serious import, begins by setting out that on the 5th day of February, the prisoners had 'been served with a long list containing the names and addresses of the witnesses for the Government, and that on the next day, the 6th of February, a supplemental list consisting of the names and places of abode of two more witnesses was served. The names on this second list were W. R. Speare and William Hangerfield, and the question is, whether the prisoners were served with this list two full days before the trial. Now, the sixth of February was Friday, and the statute requires, as we have seen, that the defendant shall be served two entire days before the trial. The defendant’s counsel contend that only Saturday is to be counted, Sunday being dies non juridieus, and that as the trial began, as they contend, on Monday, the fractional part of that day is not to be reckoned, so that they were not-served, as counsel contend, two entire days before trial with the list of these two witnesses. As the trial, however, is to be regarded as beginning on the next day, viz., on Tuesday *166 the 10th, when the jury was completed, it is clear that they were served two entire days before the trial began.
JBut even had the trial begun on the 9th, the list would have been served in time, for the maxim dies Dominions non est juridieus does not apply to matters of this sort. The Lord’s day, dies Dominicus, is a day upon which the courts do not sit, it is true; although in early times the English ecclesiatical courts sat on Sunday, and only ceased to do so when Parliament interfered. All, therefore, that is intended by this maxim is that the courts do not do business on Sunday. But other business may be done on that day, unless forbidden by the statute, and if, therefore, the statute providing for the delivering'of this list does not prohibit Sunday from being counted as one of the days, there is nothing to prevent it being so counted.
Upon this point I will read from Foster’s Crown Law, page 230, note, where, in commenting on the English statute on the same subject, the writer says: “ Upon the commission which sat in Savoy and in the north for the trial of the rebels in the year 1746, the five days, as I have already said, were likewise exclusive of an intervening Sunday; that not being thought a proper day for the prisoner’s advising with his counsel or preparing for his defense. It was so ordered upon a like commission in the north in the year 1716 for greater caution and to obviate all objections. But the statute doth not require it.”
This question, however, does not arise in this case, as the trial is to be regarded as beginning on the 10th of February, when the jury was completed, and the list was, therefore, delivered in ample time.
But there is a more serious question raised by this fourth exception. It appears that on the 14th of February, and after the trial had been going on for some days, another list was served upon the defendants, and this third list, while containing the names of Dangerfield and Speare, had in addition the name of W. Pettis. The third notice as to Dangerfield and Speare was doubtless given for greater caution, but "W. Pettis was a new witness, of whom no notice *167 had been given before the trial began. I will read that portion of the exception which states the facts in regard to this witness.-
“ And the prosecution then and there proposed to examine the witnesses on the last named list on behalf of the United States, but the court decided that although the affidavit of the United States attorney disclosed a sufficient excuse for not having served the names of the witnesses on the defendants two legal days before the commencement of the trial, .yet that the said supplemental list had not been served on the defendants two entire days before the said 16th day of February, 1880, and hence the said witnesses could not be examined on said 16th day, but that the court would allow them to be examined on the 18th of February, and the court adjourned on February 17th until February 18th, the United States having no further witnesses in readiness, on which 18th day of February, 1880, the prosecution called, to maintain the issue on its part joined, and before the defendants liad presented their testimony on their behalf, W. R. Speare, William Dangerfield, and W. Pettis, as witnesses on behalf of the prosecution; whereupon the defendants objected to the said witnesses, and each of them, being sworn, because their names and places of abode had not been served upon them two entire days before the trial, which objection was by the court overruled; and the said witnesses were sworn •and testified in chief on behalf of the prosecution; to which ruling of the court the defendants excepted,” &c. •
Now, as to Dangerfield and Speare, the original notice of February 6th was sufficient. But as to Pettis, we are of -opinion that the notice was not sufficient, it not having been .given until after the trial began; but that is hardly decisive of the fate of the exception. The bill of exceptions merely -sets out that these -witnesses were sworn. Now, they were incompetent witnesses, but what did they swear to? The testimony might have been favorable for tbe defendants; it might have been a matter wholly immaterial, and the statute refers to witnesses who are to be called to support the indictment. Now, an imcompetent witness may be improperly *168 admitted to testify, but if his testimony is immaterial, or if it has been unfavorable to the other side, it is no ground of reversal. In the case of the Railroad Company vs. Smith, 21 Wallace, 255, incompetent testimony had been received in the court below, but had not been' set out in the bill of exceptions, and the Supreme Court said, page 261: ‘‘For-aught that we can know the witness may have answered that he was unable to state what injury or damage, hindrance- or delay, was occasioned to the company in the running of the road by the defective character of the bridge, or what number of hands were employed or would have been necessary if the bridge had been properly constructed. We cannot, therefore, see that any harm resulted to the defendant from the exclusion. Whatever may be the rule elsewhere, to-render an exception available in this court, it must affirmatively appear that the ruling excepted to affected or might have affected the decision of the case. If the exception is-to the refusal of an interrogatory not objectionable in form,, the record must show that the answer related to a material matter involved; or, if no answer was given, the record must show the offer of the party to prove by the witness particular-facts, to which the interrogatory related and that such facts-were material. Such has been the decision of this court in. several cases, and was distinctly affirmed at the present term, in the case of Packet Company vs. Clough.”
And in that case, which is to be found in 20 Wallace, 542,, Judge Strong, delivering the opinion of the court, said (I read from page 542):
“ The last assignment of error is the rejection of the deposition of Turner. Of this it is sufficient to say that we have-not before us either the deposition or any statement of what it tended to prove. We cannot know, therefore, that it was-, of any importance, or that if it had been admitted it could, have had any influence upon the verdict.”
Now, there is nothing on the face of this exception by which we can see what the evidence was, whether it was material or whether the defendant sustained harm by it, for if he sustained none, then, although the witness examined: *169 was incompetent, it could have made no difference to him in the final result. It is true that the record states that the evidence was “ in behalf of the prosecution,” but we do not see that that informs us of anything. This exception must then be overruled for the reason stated.
The fifth exception is in regard to the testimony of one Vm. Duehay, who was called for the pi’osecution. and testified as to certain threats which were made by'the defendant Queenan against the deceased the summer before the murder. The objection to the admission of this testimony was that the threat was made too long anterior to the deed. But we think otherwise. Threats are evidence in a case of this kind, and there is no particular limit to time, and we think that the summer before the murder was not too remote in point of time.
The next exception is as to the testimony of one Benjamin Johnson. This witness testified that he had been in company with these parties on the night of the murder, and had seen them attack and knock down the defendant. The United States, then, in confirmation of Johnson’s testimony, offered the evidence of one "Washington Braxton, who had heard Johnson relate the same story on the Saturday morning after the murder; but at that stage of the trial the court excluded the testimony. The defense then called the prisoners themselves, and as the bill of exceptions sets out, “ each of the defendants was examined on his own behalf, and swoi'e that neither he nor his co-defendants were with Johnson on the evening or night of the homicide, and did not, nor did either of them, have anything to do with the homicide, and contradicted all Johnson’s evidence in respect to their connection therewith.”
After the defendants had testified as above, the United States renewed the offer, which had been rejected, to prove by Braxton that on the Saturday morning after the murder Johnson had told him (the defendants not being present) the same story that he had told in court. This evidence the judge trying the case now held admissible, to which the defendants excepted, upon the ground that Johnson’s state- *170 meat, not under oath, could not be better than that given under oath.
We think that the evidence was competent. There has been much conflict of decision in regard to this question. Evidence in corroboration of the statement of witnesses under certain circumstances has always been received, and under certain other circumstances it has always been rejected, so that the question in each case is, whether the circumstances are such as to allow the corroboration.
The Maryland authority upon the subject is to be found in Cook vs. Curtis, 6 Harris and Johnson, 93, where the Court of Appeals, by Buchanan, J., said: “ We can perceive no good reason why the evidence offered and rejected should not have been received in corroboration of what was sworn to in the deposition of Doctor Eingsmore, a sufficient foundation for that corroborating testimony being laid by the plaintiff, in offering evidence that Eingsmore was not present at the birth of any of Mrs. Cook’s children, which was substantially to impeach his credibility. And where the credibility of a witness is attacked by the opposite party, his prior declaration may be given in evidence to show his consistency.”
That decision was subsequently affirmed in the case of the Washington Fire Insurance Co. vs. Davison et al., 30 Md., 91, where it was held, in the language of the syllabus, “that if a witness swears he was present on a certain occasion when a certain act was done and a particular remark was made, and the opposite party proves that he was not present, such proof goes to impeach the credibility of the witness, and his testimony may be corroborated by proof of prior declarations in regard to the alleged act and remark.”
In the Supreme Court of the United States, in the case of Ellicott vs. Pearl, 10 Peters, 439, Mr. Justice Story, in speaking upon the subject, lays down the general rule that such evidence is not admissible; but, after giving the reason of the court for rejecting the corroborating evidence in that case, and laying down the general rule as to such testimony, he says : “We say in general, because there are exceptions, but they are of a peculiar nature not applicable to the cir *171 cumstances of the present case ; as where the testimony is assailed as a fabrication of a recent date, or a complaint recently made ; for there, in order to repel such imputation, proof of the antecedent declarations of the party may be admitted.” The opinion of Judge Story seems to fully sustain the Maryland authorities, which, as far as the facts relate to the question raised here, are very strongly in point.
We, therefore, see no error in submitting this evidence in corroboration of Johnson’s story.
The same principle applies to the seventh exception, which réfers to the testimony given by the witness Croggon, who testified in corroboration of Johnson’s statement that he had been told the same story by Johnson on the Sunday following the murder.
And so, too, the same ruling must apply to the eighth exception, where, in corroboration of the testimony of a man named Brown, produced by the prosecution, and who testified that he had- met the defendants, and the witness Benjamin Johnson, in the immediate vicinity of the scene of the murder of the deceased, Iiirth, on P street, immediately before the time of its commission, and that he, said Brown, was then in company with a man named Richard T. Craig ; and the defendants, upon cross-examination of said witness, asked him whether he had not been confined in the penitentiary, to which he answered, no ; and whether he had not been drummed out of camp, with his head shaved, for selling whiskey to soldiers, and admitted that he had been so treated unjustly; and also whether he had' not been a common informer in liquor cases, and admitted that he had testified for the District in such cases; and whether he had not been paid for testifying in this case, to which he answered, no; and whether he had not attempted to bribe the above-mentioned Richard T. Craig to testify before the grand jury that he, Craig, had been in company with the witness Brown on the night of the murder, and had seen the defendants and the witness Benjamin Johnson in the vicinity of the scene of the murder and immediately before the time of its commission; and whether he had not learned from the news *172 papers all the matters which he had testified to here about the defendants being in the vicinity of the homicide at the time it was committed; whereupon the United States, in rebuttal, and in corroboration of the said evidence of the said Brown, offered to prove by one James C. Little that the witness Brown had, on Thursday morning, the day after the murder, made to him, not in the presence of the defendants, or either of them, substantially the same statement concerning the same matter; to which said offer .the defendants objected, and which said, objection the court overruled, and permitted the said testimony of the said witness Little to be given to the jury; to -which ruling of the court the defendants excepted,” &c.
The ninth exception relates to the testimony of the defendant Edward Queenan, and is as follows: “Be it remembered that,” &c., “ Edward Queenan, one of the said defendants, having testified on his own behalf, on cross-examination was asked by the attorney for the prosecution this question:
“ Are you the same Edward Queenan who was arrested with one William Broadus and William Simms, in 1875, on a charge of stealing a coat, overcoat, and umbrella, and turned State’s evidence, and appeared as a witness in that case? ” To which question the defendants objected, and which objection the court overruled, and the said Queenan was required to answer thereto, and answered that he was.
And the United States thereupon offered the record of the said conviction of Broadus, and read the same to the jury; to which ruling of the court the defendants excepted, &c. We do not see that any harm was done the defendants by this question, or its answer, and, therefore, overrule the exception.
The tenth exception relates to the admission as a witness of one Waterman P. Bagley. It appears that in the list of witnesses which was served upon the defendants two entire days before the trial, this witness was described as Wm. P. Bagley. Now, “ Wm.” is usually supposed to be an abbreviation for “ William.” But the witness, on being *173 sworn, testified that his name was not William P. Bagley, but Waterman P. Bagley. If the notice had been simply W. P. Bagley, there would have been no objection to the absolute identity of the party. This was a very close technical objection. But as we have nothing in the record to show what his testimony was, or even its purport, we are not called upon to consider whether to reverse upon it or not.
The eleventh exception is as follows: “ Be it remembered, that,” &c.,t£ one Bichard T. Brown, having been called as a witness and sworn on behalf of the prosecution, testified that, on Wednesday, January 7, 1880, at night, and about eight or a quarter to eight o’clock, he saw the defendants in this cause and one Benjamin Johnson near the corner of Seventeenth and P streets, and on the north side of P street, and that the defendant Neverson spoke to him, and that he, the said witness, then passed on, and that a man b}7 the name of Craig was with him at the time; and having been shown one Bichard Craig, said that that was the man. The defendants asked on cross-examination of the said witness Brown the following questions:
a Bid you not, in the restaurant, on the corner of Ninth and Boundary streets, or that immediate neighborhood, on the 29th of January, 1880, tell Bichard T. Craig he could have fifty dollars by testifying he was with you when you met the men on Seventeenth street?”
“ Bid you not, then and there, say to Craig that you would give him fifty dollars, or he could have fifty dollars, if he would go before the grand jury and testify that he and you met Bedford, Queenan, Pinn and Johnson on Seventeenth street between N and 0 streets, and that you walked up Seventeenth to P street?
“ Bid you not, at the same time and place, ask Craig to state that while the men talked with you, that he, Craig, stepped ten or fifteen feet away?
“ Bid you not, at the same time and place, ask Craig to go over with you to Fourteenth street and get a portion of the money — two dollars?
*174 “ Which said questions the witness answered in the negative.
“ Whereupon the defendants in defense offered to show by one Richard T. Craig, whom Brown had identified as the man who had been with him on the night of the murder,, that the said Brown had made the said statements to and the said requests of the said Craig at the time and place in the said questions mentioned, which offer the court refused and which testimony was rejected; to which ruling of the-court the defendants excepted,” &c.
These questions were entirely collateral to the issue, and it is plain that the defendants were concluded by the answer-they received.
The twelfth exception is as follows: “Be it remembered that,” &c., “ the prosecution, to maintain the issue on its part joined, offered the evidence of Charles Saffell, as to-the manner of the defendant Joseph Neverson at the drugstore, in the presence of the body of the deceased, Hirth, on the night of the murder; whereupon the defendants offered by one William T. Criswell to show what the defendant Neverson said at that time and place, while he was standing by the body of Hirth, which offer was by the court refused; to which refusal the defendants then and'there excepted,” &c.
Now, a witness had been called upon by the prosecution to prove what Neverson did whilst standing by the body of the deceased on the night of the murder. The defense did not cross-examine that witness at all but let him go. He had not been asked by the prosecution what Neverson said,. but even without that, I am inclined to think that he might have been cross-examined in regard to it. But no cross-examination was- attempted, and afterwards an independent witness was calléd by the defense, not to contradict the witness who had been called on the part of the prosecution, not to explain away the conduct of Neverson, but to prove another and different fact.
Now, it is a general rule that the declarations of the party accused of the crime are not evidence for him. State vs. Hildred, 9th Iredell, 440.
*175 Sometimes words are so mixed up in deeds that they become part of the res gestee. But it seems to us that that was not the case here. The ruling we think was right. But there is another objection to this exception, the same objection that has proved fatal to others already passed upon-
Let it be known that the point of the exceptions is this:
“ Whereupon the defendants offered by one William T. Criswell to show what the defendant Neverson said at that time and place while he was standing by the body of Hirth, which offer was by the court refused.”
As is shown by the decision in the Supreme Court already quoted, it was the duty of the defendants to have 'told the court what they proposed to prove by this witness.
And here it may be a suitable place to observe the difference between incompetent testimony that has been received, and an offer of evidence which has been refused.
If incompetent testimony has’ been received it is clear, under the decisions, that it must be set out in the bill of exceptions so that the court may see what it is; whether any harm has come to the defendant. Where evidence is offered but not received, there it is necessary that the party who offers it should apprise the court of what he hopes to prove so that the court may have something to act upon, and the record must show it. In one case the court acts upon ■evidence received, and in the other case it acts upon the ■offer of evidence. In this case, no evidence was received, and according to the decision of the Supreme Court it is necessary that the defendant should state, in his bill of exception, what it was he proposed to prove.
We have now reached the thirteenth exception. A witness by the name of Sarah Turner, having been called by the defense for the purpose of proving an alibi for the defendant Queen an, testified in the course of her examination, “ that on the evening of the murder, and about six o’clock, the defendant Queenan called at Mrs. Ridenour’s, her service place, and that she saw him there; and having been cross-examined by the prosecution, and having left the stand, was recalled by the prosecution, and asked the following question, *176 against the objection of the defendants: ‘ Did you not, on Friday, at Mrs. Ridenour’s house, say to officer Acton that ■Queenan did not call for you at your place of service, and did not come there, and that you first saw him at your sister’s ? ’
“ To which question the witness answered, !uo;’ but that she did say that she saw him at her sister’s; whereupon the ■Government offered to prove'by one Joseph Acton that he had had an interview with one Sarah Turner at Mrs. Ridenour’s, on Friday, January 16th, and that she told him that she did not know Queenan, and that he did not come to her service place on the night of the murder, and that the first she saw of him that night was at the house of her sister; to which offer the defendants objected; which objection was overruled by the coui-t; to which ruling of the court the defendants excepted,” &c.
It is claimed by the defense that the answer of the witness to this question was conclusive upon the prosecution, it being a question asked in cross-examination upon a motion collateral to the issue; we do not think so, the alibi which the defendant Queenan had set up was a material matter of the case or fact upon which the trial turned and Sarah Turner’s testimony was important testimony relating to that question. The government had an undoubted right to contradict her statements in regard thereto. So that we see no error, therefore, in “this ruling.
The fourteenth exception contains the prayers for instructions which were submitted by counsel for the defense and the charge of the court to the jury. The court refused to grant any of these prayers except one upon the question of credibility, but grouped the points in the case in a general charge to the jury covering the whole ground, and in this charge we see no error.
There are some other exceptions taken by counsel for the defendant Pinn relating to the selection of the jury. Certain questions were put to persons who had been summoned to attend as jurymen going to the matter of their competency. But after the inquiry into competency had been *177 made and the judge had ruled that they were competent, they were,peremptorily challenged by the defense so that, they did not sit on the jury and the defendants were not' prejudiced even if the ruling of the court were wrong, unless! in consequence of the ruling they were compelled to exhaust' their peremptory challenges upon incompetent jurors. But it does not appear from the record that the peremptory challenges for the .defendants were exhausted and' we are not to presume anything against the fairness of the trial below or to decide upon the ruling of the court unless it appears upon the record that if wrong the party taking the exception was prejudiced by it.
Judgment affirmed.