**Clifton GREGORY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 21089.

United States Court of Appeals District of Columbia Circuit.

Argued Aug. 15, 1968.

Decided March 18, 1969.

Petition for Rehearing Denied April 25, 1969.

---

Mr. John A. Shorter, Jr., Washington, D. C. (appointed by this court), for appellant.

Mr. Lawrence Lippe, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

BAZELON, Chief Judge:

The owner of a liquor store in the District of Columbia was shot in the back and killed by an armed robber on the morning of October 29, 1964. Four witnesses identified Clifton Gregory as the assailant; the Government also relied upon the appellant's resistance at the time of his arrest to show a consciousness of guilt. The appellant produced one witness, a customer at the store, who testified that he was not the murderer.

He also attacked the reliability of the Government witnesses' identifications. After a nine-day trial, the jury returned a verdict of guilty on counts of felony murder and robbery, recommending life imprisonment for the former. The trial judge imposed a concurrent sentence of ten years for the robbery.

■ Two earlier trials resulted in a reversal by this Court [1] and a mistrial. The appellant contends that his third trial was vexatious and placed him twice in jeopardy. In addition, Gregory argues that it ws improper to treat the third trial as a capital case since the jury recommended life imprisonment in the first trial. Since the mistrial was declared at the request of the defense and since the present conviction did not result in a sentence of death, neither contention is tenable.[2]

The appellant also challenges the testimony of a Government witness whose name was not on the original "capital list" required by 18 U.S.C. § 3432 (1964).[3] And his contention that the identification testimony of another witness was inadmissible on due process grounds compels this Court to examine once again the implications of Stovall v. Denno.[4] We deferred consideration of this case pending our en banc decision in Clemons v. United States.[5] Applying the principles established there, we conclude that no impropriety in the admission of identification evidence requires reversal. Since we also conclude that the addition of a Government witness to the "capital list" was proper in the circumstances of this case, we accordingly affirm the conviction.

I

Robert Rosenstein, the manager of the liquor store and the son-in-law of the murdered owner, testified that he heard a sharp noise while in a back storeroom on the *morning* of the robbery. Upon returning to the front of the store, he saw his father-in-law lying on the floor. The gunman instructed him to lie down, then told him to empty the safe. Mr. Rosenstein complied, at gunpoint. He also handed the contents of the cash register to the robber. At all three trials he identified the appellant as the gunman, and also testified upon direct examination to a prior line-up identification which occurred on November 17, 1964, about three weeks after the robbery.

1. Gregory v. United States, 125 U.S.App. D.C. 140, 369 F.2d 185 (1966).

2. A retrial following the reversal of a conviction on appeal is clearly permissible. Green v. United States, 355 U.S. 184, 189, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), United States v. Ball, 163 U.S. 662, 672, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). Similarly, while there are limits to the right of the Government to reprosecute a defendant following a mistrial, see Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), Carsey v. United States, 129 U.S.App.D.C. 205, 392 F.2d 810 (1967), this is not a case where a mistrial was declared over objection of the defense. Rather, the defense counsel here moved for a mistrial because of improper but unsolicited testimony by a Government witness. We need not decide whether the third trial could properly be treated as a capital case after the jury recommended life imprisonment in the first trial, since we cannot conclude that there was a "reasonable possibility" of prejudice to the defendant even if the treatment of the case as capital was improper, since the jury recommended life imprisonment. See Springfield v. United States, 131 U.S.App.D.C. 166, 403 F.2d 572 (1968); Bailey v. United States, 132 U.S.App.D.C. 82, 405 F.2d 1352 (1968); cf. Howard v. United States, 128 U.S. App.D.C. 336, 389 F.2d 287 (1967).

3. "A person charged with treason or other capital offense shall at least three entire days before commencement of trial be furnished with a copy of the indictment and a list of the veniremen, and of the witnesses to be produced on the trial for proving the indictment, stating the place of abode of each venireman and witness."

4. 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

5. 133 U.S.App.D.C. 27, 408 F.2d 1230 (December 6, 1968).

The appellant does not challenge this testimony.

The second eye-witness was Glenn Caddell, a plumber who entered the store to purchase a soft drink while the robbery was in progress. A man standing behind him said, "This is a hold-up." When Mr. Caddell turned to look at the robber, he was pistol-whipped on the jaw. When the hold-up was completed, some several minutes later, the robber told him to lie on the floor. Caddell identified the appellant at trial, and also testified to a prior identification at the police station.

George Matthews was working at a gas station near the liquor store on the morning of the robbery. At the third trial he testified that the appellant ran through the station carrying a paper bag at about the time of the crime. In the course of his testimony he stated that a young boy, Cleveland Bryant, was also at the gas station. With the help of the witness, the Government located the boy and sought permission from the court to call Mr. Bryant as a witness. To meet the defense objection that the boy's name was not on the witness list which 18 U.S.C. § 3432 (1964) requires the Government to provide the defense three days before trial, the Government moved for a three-day continuance. When the trial reconvened, the defense counsel argued that although he had interviewed Mr. Bryant, the time had been inadequate for a full investigation. Although both the Government and the court suggested that Mr. Bryant could testify later in the trial, thereby allowing more time for investigation, the defense continued to insist that Mr. Bryant should not be allowed to testify under any conditions. After holding a hearing to determine why the new witness was not on the original capital list, the trial judge permitted Mr. Bryant to testify; he identified the appellant.

The argument of the defense at trial and now on appeal is that only the Government's negligence caused the late discovery of Mr. Bryant as a potential witness, and consequently that the prosecutor should not have been allowed to add his name to the list. The Government argues persuasively, however, that despite reasonable efforts to locate all witnesses, it first heard the name Cleveland Bryant during George Matthews' testimony in the third trial. Although he had vaguely mentioned to both the police and the prosecutor at various times that a boy was with him at the station when the robber ran through, he had not been responsive to requests for his companion's name. The record amply supports the proposition that Mr. Matthews was neither an articulate nor a cooperative witness. During the first trial, although initially called as a Government witness, he abruptly altered his story and testified for the defense that the robber he observed was not Clifton Gregory. It was only during the course of the third trial that the Government succeeded in locating him once again and subpoenaed him to testify. He then did, as noted, identify the appellant as the fleeing robber. When impeached by his inconsistent prior testimony, he stated that the veiled threats of the appellant's friends at the first trial had convinced him that he should not, could not safely identify Gregory. His explanation for not revealing Cleveland Bryant's name sooner was consistent with his claimed fear of the defendant and his friends: "I didn't want to get the boy involved."

In these circumstances, we cannot conclude that the Government was at fault in failing to discover Cleveland Bryant before the start of the third trial. More important, we do not find that the appellant was prejudiced by the sudden appearence of Mr. Bryant as a witness. Had his name been placed on the original "capital list", the defense would only have been guaranteed three days by the statute to interview and investigate him. In this case, the defense actually had at least four days. Therefore, we conclude that the trial judge did not err in permitting Mr. Bryant to testify. We need not decide what showing of prejudice to the defendant or lack of diligence on the

part of the Government would dictate a different result.[6]

## II

The circumstances of Glenn Caddell's out-of-court identification of the appellant Gregory are less than luminously clear. In the present trial Mr. Caddell identified the appellant in court on direct examination. On cross examination, the defense counsel attempted to impeach the identification by pointing out certain rather minor inconsistencies between the actual height, weight and appearance of Gregory and the description Mr. Caddell gave to the police shortly after the shooting.

To rehabilitate the witness, the Government on redirect examination introduced evidence of the previous out-of-court identification. Mr. Caddell testified that he was called to the police station on November 17, 1968, the day the appellant was arrested. He arrived too late for the lineup at which Mr. Rosenstein identified Gregory. Walking down a hallway with a police officer, however, Mr. Caddell passed the appellant. The defense counsel objected to testimony concerning the conversation between Mr. Caddell and the police officer that then occurred. The police then took Mr. Caddell to an office used by detectives on the force. Mr. Caddell testified that a special lineup with five participants was held there, and that he identified the appellant.

The defense counsel on recross examination confronted Mr. Caddell with his testimony in the first trial that he had seen the appellant alone in the detectives' office rather than in a lineup. The witness replied that there must have been some mistake in the first trial, that he had indeed seen a lineup.

The defense also elicited on recross examination testimony that the police officer had asked Mr. Caddell in the hallway, after passing the appellant, whether Gregory was the robber. Counsel did not, however, pursue this inquiry to reveal the details concerning this conversation to which Mr. Caddell testified in the first trial. The witness had then said,

I was walking in the hall down there to where they take the pictures and everything, and I met Mr. Gregory in the hall, and they said was that him? I said he was a little too tall and he had a goatee on. And they said he has double heels on his heels and the goatee is fresh.

The defense counsel not surprisingly seized upon the conflict in Mr. Caddell's testimony in the first and third trials concerning the circumstances of the confrontation in the detectives' office. The Court agreed that the defense had a right to explore the matter, and the Government agreed to find out what detectives were present at the time.

Later in the trial, the Government introduced testimony from one police officer who claimed to have been present at a lineup held on the morning of November 17 in the detectives' office at which Mr. Caddell was present. On cross examination, Officer Hilton testified that one of the other participants in the lineup had been another policeman, Officer Chapman. The defense counsel introduced evidence that Gregory had not been arrested until 12:50 p. m., and therefore there could have been no lineup in the morning. Moreover, to suggest that Officer Hilton was mistaken concerning the lineup he remembered, the defense pointed out that Officer Chapman was shown in the picture taken of the lineup which Mr. Caddell had arrived too late to view.

This record presents many questions concerning what actually occurred after Mr. Caddell tardily reached the police station. In other circumstances, we might well remand for a fuller elaboration of the facts. However, the events

---

6. *See* United States v. Schneider, 21 D.C. 381, 413–414 (Sup.Ct.D.C.1893); *cf.* Logan v. United States, 144 U.S. 263, 306, 12 S.Ct. 617, 36 L.Ed. 429 (1892) (dicta); *but cf.* United States v. Neverson, 12 D.C. (1 Mackey) 152, 166–168 (Sup.Ct.D.C.1880).

in question took place more than four years ago. The facts were thoroughly, if inconclusively, examined in the trials below. We cannot conclude that a remand for clarification would achieve anything but further delay.

Therefore, with some reluctance we decide this appeal from the record now available. Since this case arose before the decision of the Supreme Court in United States v. Wade,[7] our task in doing so is to determine whether the admission of the identification testimony denied the appellant due process of law.[8] While we must to carry out this responsibility evaluate the "totality of the circumstances," our inquiry is helpfully structured by a focus upon three distinct questions. First, was the challenged confrontation suggestive? If so, was the suggestive confrontation unnecessary? Finally, if the confrontation was unnecessarily suggestive, does it so taint the testimony relating to the out-of-court and the in-court identifications as to require reversal of the conviction?

### III

The confrontation in the detectives' office in this case was undeniably suggestive if Mr. Caddell did indeed, as he testified in the first trial, identify the appellant standing alone. Even if there was a lineup of sorts arranged, as he testified in the third trial, the record provides no adequate information concerning its fairness: who the other participants were, how closely they did or did not resemble the appellant in size, appearance and race, and so forth. On either view of the evidence, therefore, we must conclude that the confrontation may have been suggestive. Moreover, in view of the flat inconsistency in the testimony of its witness, the Government bore the responsibility to investigate the true circumstances of the office identification. The only evidence it adduced was the testimony of Officer Hilton, which

was seriously undermined by the cross examination.

We therefore cannot conclude that the confrontation was not suggestive. Nor can we conclude that it was necessary. While Mr. Caddell may have arrived too late for the regular lineup through no fault of the police, there was no imperious necessity for an identification that afternoon. The police already had a lineup identification by Mr. Rosenstein. By November 17 the crime was almost three weeks past; there was then no danger that fresh recollections would fade. Mr. Caddell could have returned on another day to view a normal lineup that could have been held under better controlled and more reviewable circumstances.

There is also the problem presented by the encounter in the hallway. By the testimony in both trials the police officer did call Mr. Caddell's attention to the appellant under circumstances that were suggestive. The comment by the police officer testified to in the first trial that Gregory was wearing a fresh goatee is more difficult to evaluate. On the one hand, the statement inevitably conveyed to Caddell that the police had some special interest in the suspect, and were eager for an identification. On the other hand, if Gregory was attempting to disguise his appearance by false heels and a new beard, it is not clear that the police could not call the subterfuge to Mr. Caddell's attention. The record, of course, does not indicate whether the policeman's comment was true. But in any event, an offhand comment in a hallway was not a suitable way to tell Mr. Caddell of the efforts at disguise, if any. Where the risk of suggestion is so great, the greatest care is demanded in any such communications to the potential witness.

The question of the necessity for this confrontation revolves around the argument of the Government that it was accidental. While this may well have been

---

7. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

8. See Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

true, the police have some duty to prevent such accidents. The obligation to avoid chance encounters is undoubtedly greater after *Wade*.[9] We are unwilling, however, in even a pre-*Wade* case to absolve the Government of all responsibility for a confrontation of this sort.

## IV

Our conclusion that the confrontations in both the hallway and the detectives' office were unnecessarily suggestive does not terminate the inquiry. We also must determine whether, in the language of Stovall v. Denno, they were so "conducive to irreparable mistaken identification that he was denied due process of law."[10] As we made clear by the several opinions in Clemons v. United States,[11] the decision to affirm or reverse the conviction depends upon the resolution of two issues: whether the admission of evidence relating to the out-of-court identification (and to the in-court identification) was constitutional error, and, if so, whether the error requires reversal.

Both questions depend in a sense upon the "totality of the circumstances," but it should be noted that the universe of relevant circumstances differs for the two issues. In deciding whether the admission of evidence potentially tainted by an unnecessarily suggestive confrontation was error, we must look to all the circumstances, but only the circumstances relating to the identification made by the witness in question. In deciding whether the error, if any, requires reversal, we must consider all the circumstances relating to the entire case, not only those affecting the magnitude of the er-

ror—how fatally unreliable the identification was—but also those relating to the other evidence proffered by the Government and advanced by the defense.

The majority opinion in *Clemons* focused upon the determination of whether the admission of evidence constituted error. In discussing that issue, we concluded that "if a determination can be made that the out-of-court identifications admitted into evidence here were justified by sources other than the [unnecessarily suggestive] confrontations and thus can be deemed to be reasonably reliable indicators of guilt," there was no error in the admission of evidence.[12] This application to out-of-court identifications of the "independent source" analysis developed by the Supreme Court in *Wade* for in-court identifications[13] resulted in a determination that there was no error in the admission of evidence in *Clemons*,[14] and, as the dissent pointed out,[15] made it unnecessary to resolve the second question potentially present in identification cases; *i. e.*, under what circumstances an error would require reversal.

In this case, the confrontation in the hallway and quite possibly the one occurring in the detectives' office were the sort of one-man shows-ups which both the Supreme Court and this Court have found particularly dangerous.[16] At least according to the testimony in the first trial, moreover, which was not contradicted in the third trial, the comments by the police officer in the hallway were calculated to encourage an identification.

To evaluate the danger that these suggestive circumstances produced an inaccurate identification, we must consider

---

9. *Cf.* Hemphill v. United States, 131 U.S. App.D.C. 46, 402 F.2d 187, 192 (1968).

10. 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967).

11. 133 U.S.App.D.C. 27, 408 F.2d 1230 (December 6, 1968).

12. *Id.* at p. 45, 408 F.2d p. 1248.

13. *See* United States v. Wade, 388 U.S. 218, 241–242, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1968).

14. 133 U.S.App.D.C. at pp. 45–47, 408 F.2d at pp. 1248–1250.

15. *Id.* at p. 51, 408 F.2d at p. 1254.

16. *See, e. g.,* Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Russell v. United States, 133 U.S.App.D.C. 77 at p. 80, 408 F.2d 1280 at p. 1283 (January 24, 1969).

the other factors bearing upon its likely reliability. Mr. Caddell's out-of-court identification occurred almost three weeks after the crime, and the witness had by his testimony never seen the appellant before the hold-up. While these facts do not indicate the unreliability of the identification, they do rob the identification of the indicia of reliability sometimes provided by fresh recollection [17] or prior acquaintance with the suspect.[18]

There are, however, several factors which do support the reliability of the identification. Mr. Caddell had good opportunity to observe the robber under conditions of good lighting—according to his testimony, he watched the holdup man for "three or four minutes" while the cash register was being emptied, before being told to lie down on the floor.[19] Second, he gave a description of the gunman to the police shortly after the crime.[20] While the defense counsel made much of the supposed inconsistency between the "thin" nose and lips described and the "medium" nose and lips actually possessed by the appellant, the description was substantially correct as to the height and weight of the appellant.

Third, while the police may have indicated some interest in an identification of the appellant, there is no evidence in the record that Mr. Caddell knew anything of the case already built against the appellant.[21] And, fourth, Mr. Caddell was not in the company of any other witness at the time he identified the appellant; there is accordingly no reason to fear that his identification was prompted by that of another witness.[22]

Fifth, Mr. Caddell was not himself a victim of the robbery or the shooting; the danger discussed in *Wade* that a victim's "understandable outrage may excite vengeful or spiteful motives" is consequently absent.[23] Although Mr. Caddell gave inconsistent testimony in the first and third trials concerning the circumstances of his out-of-court identification, moreover, he was firm in his identification of the appellant under rigorous cross examination.[24] While this factor may be more probative of the obduracy of the witness than of the reliability of his identification, it has some force on the latter score.

These considerations, while tending to support the reliability of the identification, are not entirely persuasive. There is, however, a final factor which deserves attention in deciding whether the admission of evidence was error. The Supreme Court justified the right to counsel at a lineup prospectively announced in *Wade* largely in terms of the inability of the jury to evaluate accurately the reliability of an identification made under uncontrolled circumstances in which neither the witnesses nor the suspect were likely to detect "suggestive influences," let alone be able to prove their existence in court.[25] The same reasoning presumably underlay the curt but pregnant announcement in *Stovall* that the admission of evidence based upon an "unnecessarily suggestive [confrontation] * * * conductive to irreparable mistaken identification" constitutes a denial of due process of law.[26]

---

17. *See* Simmons v. United States, 390 U.S. 377, 385, 88 S.Ct. 967, 19 L.Ed.2d 1247; Russell v. United States, *supra* note 16, at p. 38, 408 F.2d at p. 1241.

18. *See* Clemons v. United States, *supra* note 5, at p. 38, 408 F.2d at p. 1241.

19. *See* Simmons, 390 U.S. at 385, 88 S. Ct. 967; Clemons. *supra* note 5, at pp. 42, 47, 408 F.2d at pp. 1245, 1250.

20. *See id.* at pp. 38–42, 408 F.2d at pp. 1241–1245.

21. *See* Simmons, 390 U.S. at 385, 88 S.Ct. 967; Clemons, at p. 41, 408 F.2d at p. 1244.

22. *See* Simmons, 390 U.S. at 385, 88 S.Ct. 967; Clemons, at pp. 38, 47, 408 F.2d at pp. 1241, 1250.

23. 388 U.S. at 230, 87 S.Ct. at 1934.

24. *See* Simmons, 390 U.S. at 385, 88 S.Ct. 967; Clemons, pp. 38, 43, 408 F.2d at pp. 1241, 1246.

25. *See* 388 U.S. at 228–236, 87 S.Ct. 1926.

26. 388 U.S. at 302, 87 S.Ct. at 1972.

Since this is so, in deciding whether the admission of evidence was constitutional error in a case tried before *Wade* and *Stovall*, it is appropriate to consider the ability of the jury to evaluate the reliability of the identification in question.[27] The Supreme Court has suggested as much by its observation in Simmons v. United States that

> The danger that [photographic identifications] * * * may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error.[28]

While the evidence in this case relating to Mr. Caddell's out-of-court identification was in sharp conflict, both the Government and the defense probed the events occurring at the police station and argued to the jury that the confrontation was or was not suggestive, that the resulting identifications, both in court and out, were or were not reliable. It is true that the full details of the hallway conversation testified to by Mr. Caddell at the first trial were not developed at the third, but this evidentiary gap was produced by the objections of the defense counsel to such testimony.

■ Consequently, in view of both the factors which argue for the reliability of the identification and the fact that the jury in this case had itself an opportunity to evaluate the suggestiveness of the confrontation and the reliability of the identification, we conclude that the admission of Mr. Caddell's testimony was not error in this case. In doing so we do not approve of the sort of confrontation arranged by the police in this case. This case involves a pre-

*Stovall* identification and trial, and our reasoning applies only to such circumstances.

## V

The appellant raises one additional contention that requires attention. The defense requested a special instruction relating to identification. The trial court declined to give the instruction drafted by counsel, noting that the substance of the requested instruction was contained in the court's instructions relating to the credibility of witnesses and the requirement of proof beyond a reasonable doubt.

■ This Court has noted the need for instructions which focus the attention of the jury upon the evidence relating to identification in a case "when the defendant has placed the prosecutor's identification of him in issue."[29] We have also pointed out, of course, that "the trial judge [is] * * * not obligated to give the charge in exactly the words requested by the defense counsel."[30]

■ Upon reviewing the instructions requested and actually given in this case, we conclude that there was no reversible error committed. The instructions correctly emphasized the critical importance of the identification issue, and the need for the jury to consider the credibility of the witnesses, with special reference to the apparent accuracy of the witnesses' memories as well as their ability to observe the events in question.

We note, however, that the instruction nevertheless rings with the abstract quality so often criticized in jury instructions. The comments by the trial judge in rejecting the instruction requested by

27. *Cf.* Russell v. United States, 133 U.S. App.D.C. 82, 408 F.2d 1285 (January 24, 1969). Of course, since *Stovall* made clear the duty of the trial court to rule upon the admissibility of identification testimony as a constitutional issue of due process, in trials held after that decision the ability of the jury to evaluate reliability cannot be substituted for a ruling by the Court. *Cf.* Jackson v. Denno, 378

U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

28. 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

29. Jones v. United States, 124 U.S.App. D.C. 83, 88, 361 F.2d 537, 542 (1966).

30. Salley v. United States, 122 U.S.App. D.C. 359, 361, 353 F.2d 897, 899 (1965).

the defense counsel indicate that he was reluctant to speak directly of the facts involved in the case for fear that an appellate court would find that he had been improperly selective in choosing which facts to emphasize. We feel that a careful trial judge can avoid this danger while still directing the jury's attention to the particular issues most critical in the case. The circumstances of the out-of-court identifications were, for example, of crucial importance in this case. The trial judge could well have pointed out to the jury with greater particularity the need to evaluate the reliability of these identifications.

Affirmed.