**Charles J. ASH, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civ. A. No. 1507–70.**

**Crim. No. 44–65.**

United States District Court, District of Columbia.

June 24, 1970.

------◆------

William Gray Schaffer, Washington, D. C., for petitioner.

Thomas A. Flannery, U. S. Atty., and John A. McCahill, Asst. U. S. Atty., Washington, D. C., for respondent.

## MEMORANDUM AND ORDER

LUTHER W. YOUNGDAHL, Senior District Judge.

This is a petition for post conviction relief pursuant to 28 U.S.C. § 2255. Petitioner Charles J. Ash was convicted on March 31, 1965 on two counts of robbery and sentenced to concurrent terms of 2–6 years on each count. Petitioner's conviction was affirmed by the Court of Appeals without opinion on June 21, 1966.

Petitioner now claims that his conviction should be set aside on several grounds. His primary contention is that certain identification testimony was admitted into evidence in violation of the fifth amendment due process clause. A hearing was held in this Court on June 17, 1970 to consider the claims of petitioner. Even though only one witness to the robbery and the detective involved in the case testified at the hearing, the Court had before it all the evidence at the trial relating to identification because of the fact that those portions of the transcript relating to the issue involved in this hearing were received in evidence without objection. From that hearing and the transcript of the original trial the following facts appear.

On December 9, 1964 two men entered and robbed a Holiday Inn located at 730 Monroe Street, N. E. in the District of Columbia. At the time of the robbery four employees of the Holiday Inn were working in the vicinity of the Inn's office where the robbery occurred. At about 10 P.M. an individual, not identified as the petitioner, entered the office with a gun and ordered an employee, Jan Martin, to leave his desk and go to a back room where two other employees, Joseph Brand and Chin Row, were talking. At this time the employees were ordered to lie face down on the floor. Another armed individual entered and ordered Mr. Martin to return to the outer office where the cash register was located. This individual was later identified as the petitioner, Charles J. Ash. After Martin turned over the contents of the cash register the robbers left.

Following the robbery the police were called to the Holiday Inn where they were given a description of the robbers. The description with which we are concerned here indicated that one of the robbers was a Negro male, 25–30 years of age, 6′ 1″ tall, slim and weighing about 165 pounds, with a light brown complexion, and wearing a mustache as well as a small goatee on the chin. At the hearing Detective Walter M. Evanoff testified that this description was a composite one representing a summary of the individual descriptions given to the police by the three employees. The transcript of the trial proceedings reveals that the above description was given by each of the above named employees. In addition they described the petitioner as wearing sun glasses. The other robber was described as being shorter and of darker complexion.

In the morning following the day of the robbery, employees Martin and Row went to the police station where they individually and out of the presence of each other thumbed through a loose leaf book of approximately 30 double mug shot photos. Each individual set of photographs consisted of one full face picture and one profile picture. Detective Evanoff testified at the hearing that he placed a double mug shot photograph of petitioner approximately in the middle of the book. Martin testified at trial that after picking out the photograph of petitioner he asked Detective Evanoff to pencil in a slight goatee over petitioner's photograph. Detective Evanoff stated at

the hearing that he did this with a type of tracing paper so that no marks were left on the picture. Both Detective Evanoff and Martin testified that the drawing of the goatee occurred after Martin picked out the picture of petitioner and upon the sole request of Martin. There is some conflict in the testimony both at trial and at the hearing concerning the number of photographs of petitioner which was placed in the loose leaf book. But it is clear that at most there were two separate sets of photographs of petitioner placed in the book along with photographs of 28 or 29 other individuals. Detective Evanoff testified at the hearing that this procedure is sometimes used to check the strength of a photographic identification by seeing whether the witness will pick out both pictures.

After Martin had selected the photograph of the petitioner Chin Row proceeded to examine the book of photographs. He, too, picked out the picture of petitioner. In his case no goatee was penciled in on the picture of petitioner.

Detective Evanoff then took a batch of at least 12–15 photographs to the Holiday Inn where employee Brand chose the petitioner's mug shot. Again no goatee was penciled in on the picture of petitioner.

After the photographic identifications were made petitioner was arrested and subjected to a lineup where he was picked out of a group of four men by both Martin and Row. Apparently there was then another photographic identification and petitioner was again identified by employees Martin and Row. At trial petitioner was identified as one of the holdup men by Martin, Row and Brand.

In United States v. Wade [1] and Gilbert v. California [2] the Supreme Court held that an identification confrontation is a critical stage of the accusatorial process at which a defendant is entitled by the sixth amendment to assistance of counsel. Thus, testimony concerning an out of court identification made in the absence of counsel was subjected to a per se exclusionary rule. In addition, in order for a witness to make a subsequent in-court identification, the Government must establish by clear and convincing evidence that such in-court identification was based on an independent source.

Stovall v. Denno,[3] decided the same day, limits *Wade* and *Gilbert* to prospective application. Therefore, the instant case does not fall within the ambit of these two cases. However, the Supreme Court in *Stovall* stated that as to pre-*Wade* and *Gilbert* cases an identification must be suppressed under the fifth and fourteenth amendments if in viewing "the totality of circumstances" the confrontation was "so unnecessarily suggestive and conducive to irreparable mistaken identification that [defendant is] denied due process of law." [4]

In Simmons v. United States [5] the Supreme Court approved use of the basic *Stovall* standard to judge whether photographic identifications are violative of due process. The Court concluded that the totality of circumstances should be considered to discover whether the procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." [6]

The first major case to apply the *Stovall* and *Simmons* doctrine in the District of Columbia was Clemons v. United States.[7] The Court of Appeals adopted the independent source rule and noted that if the in-court identification was based on sources independent of the improper confrontation, there was no significant danger of mistaken identification and therefore no need to remand for a new trial.

1. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967).

2. 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

3. 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

4. *Id.*, at 301–302, 87 S.Ct. at 1972.

5. 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

6. *Id.*, at 384, 88 S.Ct. at 971.

7. 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968).

It is clear, therefore, that photographic identifications must be free from unnecessary suggestion to be consistent with due process. Petitioner attacks the procedure used to obtain photographic identifications from all three employees but he focuses the main thrust of his attack on the identification of his mug shot by employee Jan Martin. Specifically, he argues that the drawing of the goatee on the mug shot constitutes that kind of suggestiveness which causes a violation of due process. This Court disagrees. Martin was shown a book of pictures which included photographs of about 30 different individuals all of the same general age group. Thus, this is not a situation where only one or two pictures are shown to the witness [8] or where one of the pictures shown is radically different from the others.[9] In the instant case there is no evidence whatsoever that when Martin picked petitioner's picture from the loose leaf book that photograph was so situated or so marked or so different in its depiction of physical characteristics from the others as to unnecessarily instill in the mind of the witness that the man pictured was the individual sought in the robbery.

█ It is significant that Detective Evanoff did not add the goatee to petitioner's picture until after Martin picked that picture from the book. This procedure is not unduly suggestive simply because the police, in an effort to foreclose any possibility that the identifying witness may later say he made a mistake, add an important physical trait of the suspect at the time of the robbery *at the request of the witness* and after he has already selected a picture. Moreover, Martin's identification is all the more reliable because he asked for the drawing of the goatee. Although he was certain of his identification, he demonstrated that he was a discriminating witness in

asking for the goatee. Martin's actions demonstrated his sincerity as well as the absence of suggestive procedures by the police. Obviously if all the pictures in the book had goatees on the individuals there could be no valid claim of error. And just as certainly there would be error if before the witness looked through the book only the petitioner's photograph showed a goatee. Where, however, the procedure used falls between the above two extremes and the witness has already identified the suspect in accordance with permissible procedures this Court sees no reason why a more accurate picture than shown to the witness originally should be held impermissibly suggestive merely because it is used as a confirmatory tool. Such a procedure is analogous to showing the witness a more recent picture of the suspect after he has already selected one that was taken many years before when the suspect might have been thinner or heavier or younger. To hold the procedure in this case a violation of due process would be similar to holding impermissible a confirmatory line-up subsequent to the photographic identification where the suspect is presented in his then physical state rather than in his physical state of some years before. Indeed, the Court of Appeals has spoken of the possible desirability of confirmatory line-ups [10] and no case has been cited by petitioner which indicates that the updating of a picture after it has been selected is a procedure in violation of petitioner's rights under the fifth amendment.

█ Aside from the issue of the addition of the goatee to the picture of petitioner it is claimed that the inclusion of more than one set of photographs of petitioner in the mug shot book is impermissibly suggestive. However, it is important that besides petitioner photographs of about 29 other individuals were

8. *See* Mason v. United States, 134 U.S. App.D.C. 280, 414 F.2d 1176 (1969).

9. *See* Sera-Leyva v. United States, 133 U.S.App.D.C. 125, 409 F.2d 160 (1968) where in an actual confrontation with the suspect the Court of Appeals was troubled because the suspect had a distinctive foreign appearance rendering him conspicuous.

10. United States v. Hamilton, 420 F.2d 1292 (D.C.Cir. 1969).

included in the mug shot book. Moreover, the evidence tends to show that while looking through the book both Martin and Row picked out petitioner's picture immediately upon reaching it. Detective Evanoff testified that if the second set of petitioner's picture was used [11] it was only employed to check the witnesses' identification after a selection had already been made. In any event where the number of photographs is very large and at the most only two of those are of the suspect it cannot be fairly said that the procedure is *"so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable* misidentification." [12]

There are also no grounds for holding a violation of due process the photographic identification by employee Brand on the premises of the Holiday Inn the day following the robbery. Although Brand testified at the hearing that he was shown only 12–15 photographs rather than the full book as Detective Evanoff had testified there is no evidence that there were any markings of a goatee on the petitioner's picture or that Detective Evanoff somehow suggested to Brand beforehand which picture was selected by Martin and Row. Furthermore, Brand testified at the hearing that he selected petitioner's picture on the

basis of the shape of the face and skin coloring. Finally, the Court concludes that 12–15 pictures is a more than sufficient number to avoid any possibility of impermissible suggestiveness arising solely from number of pictures shown.

Even assuming that the above procedures used in obtaining a photographic identification were violative of due process there is clear and convincing evidence from the testimony at the 2255 hearing and at trial of independent sources for the in-court identifications. Two of the employees who identified petitioner as one of the robbers had at least several seconds during which to view the petitioner. It appears from the record at trial that Martin, the third employee, whose identification is under prime attack by the petitioner, had the longest time in which to view petitioner. Martin had at least 3 to 4 minutes in which to look at petitioner since it was Martin who accompanied him to the outer office to get the money.[13] The view was also unobstructed and lighting conditions were adequate,[14] and each of the employees gave an accurate and substantially identical description of the petitioner to the police shortly after the robbery.[15] Finally, each of the identifying witnesses was confident and firm in his identification at trial.[16] The identifications in

11. Detective Evanoff testified at the hearing that as far as his own recollection only one set of petitioner's photographs was included in the loose leaf book.

12. Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. at 971 (Emphasis supplied).

13. *See e. g.,* Gregory v. United States, 133 U.S.App.D.C. 317, 410 F.2d 1016, 1023 (1969); Williams v. United States. 133 U.S.App.D.C. 185, 409 F.2d 471, 472 (1969); Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230, 1248 (1968).

14. *See e. g.,* Gregory v. United States, 133 U.S.App.D.C. 317, 410 F.2d 1016, 1023 (1969); Macklin v. United States, 133 U.S.App.D.C. 139, 409 F.2d 174, 175 (1969).

15. *See* Gregory v. United States, 133 U.S. App.D.C. 317, 410 F.2d 1016, 1023 (1969). Cf. McRae v. United States, 420 F.2d 1283 (D.C.Cir. 1969).

16. *See* Gregory v. United States, 133 U.S. App.D.C. 317, 410 F.2d 1016, 1023 (1969); Williams v. United States, 133 U.S.App.D.C. 185, 409 F.2d 471, 472–473 (1969). Defendant cites *Gregory* for support of his position, but the basis for independent source in that case is almost identical with the case at bar. There the Court of Appeals concluded that independent source was established despite a minor inconsistency in the description of the nose and lip of the defendant. The Court of Appeals emphasized the accuracy of the description relating to the height and weight of the defendant. Moreover, the witness was not in the company of another when he made the identification and he had adequate time to view the defendant during the robbery.

this case are stronger than usual and the descriptions given the police after the robbery are conspicuous for their similarity and accuracy. In view of the foregoing, therefore, there is no justifiable basis upon which this Court feels petitioner may successfully attack the identifications by the witnesses.

 Petitioner alleges two other grounds for post conviction relief, both of which merit only passing mention. Petitioner seeks to overturn his indictment under Gaither v. United States [17] on the ground that the indictment did not reflect the concurrence of all members of the Grand Jury. The Court of Appeals has held, however, that *Gaither* is not to be applied retroactively and petitioner must be denied relief on this basis.[18] Petitioner also claims that he was given ineffective assistance of counsel at trial because of his attorney's failure to raise the constitutional identification issue. This claim is specious since the trial took place before either *Wade, Gilbert, Stovall,* or *Simmons* and because his attorney dutifully and strongly argued the question of the reliability of the identifications to the jury after exploring all the surrounding circumstances of these identifications through his cross examination of the witnesses. In any event petitioner has now received the review of those procedures which he attacks and he cannot be now heard to complain simply because his counsel did not press a then unrecognized constitutional right.

For the foregoing reasons, it is, this 24th day of June, 1970,

Ordered that petitioner's motion for post conviction relief under 28 U.S.C. § 2255 be, and the same is hereby, in all things denied.

---

17. 134 U.S.App.D.C. 154, 413 F.2d 1061, modified, 413 F.2d 1081 (D.C.Cir. 1969).

---

18. Gaither v. United States, 413 F.2d 1081 (D.C.Cir.), modifying 134 U.S.App. D.C. 154, 413 F.2d 1061 (1969).