RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0259p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

　　　　　　　　　*Plaintiff-Appellant,*

　　　　*v.*

DONNELL YOUNG, aka Lil Peso,

　　　　　　　　　*Defendant-Appellee.*

No. 06-5664

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 98-00038—John T. Nixon, District Judge.

Argued: September 17, 2007

Decided and Filed: July 18, 2008

Before: COLE and COOK, Circuit Judges; MILLS, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Sunny A.M. Koshy, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellant. Thomas F. Bloom, Nashville, Tennessee, for Appellee. **ON BRIEF:** Sunny A.M. Koshy, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, Elliot Williams, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Thomas F. Bloom, Nashville, Tennessee, Richard Kammen, GILROY, KAMMEN & HILL, Indianapolis, Indiana, for Appellee.

COOK, J., delivered the opinion of the court, in which MILLS, D. J., joined. COLE, J. (pp. 11-15), delivered a separate dissenting opinion.

_____

## OPINION

_____

COOK, Circuit Judge. After voir dire began in Donnell Young's capital murder case, the government located nineteen new witnesses and sought to add those names to the list of more than 100 already provided to the defense. One of the nineteen, a new eyewitness who saw Young leaving the murder scene, came to light through trial preparation interviews of crime-scene bystanders. Another trial preparation interview turned up information about a related violent assault Young

---

[*] The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

committed.  Through pursuit of that lead, the government located the other eighteen individuals as persons having knowledge of that assault.

When Young objected to the introduction of any evidence from the nineteen witnesses, the district court sua sponte invoked 18 U.S.C. § 3432, which requires the government to provide a capital defendant with a witness list at least three days before the start of trial, as grounds for excluding the witnesses.  We find an abuse of discretion in the court's choice to exclude relevant testimony on the ground that the government failed to conduct a reasonably diligent investigation.  We therefore vacate the district court's order and remand for proceedings consistent with this opinion.

I.

A.  Procedural Background

A seven-year federal investigation targeting the Los Angeles-based Rollin' 90s Crips street gang in connection with a nationwide drug-distribution conspiracy and widespread acts of violence resulted in federal charges of murder, drug trafficking, money laundering, and firearm possession, as well as others, against more than twenty-five defendants.  After a grand jury indicted Crips-member Donnell Young, a/k/a "Lil' Peso," on a drug-conspiracy charge, the government transferred him from an Oklahoma City jail, where he was being held in connection with the murder of Woody Pilcher, to the Middle District of Tennessee.  The Fifth Superseding Indictment charges Young with numerous drug and weapons offenses and three counts related to Pilcher's death—(1) killing Pilcher in furtherance of a continuing criminal enterprise and drug conspiracy, 21 U.S.C. § 848(e)(1)(A); (2) killing Pilcher to eliminate a potential witness, 18 U.S.C. § 1512(a)(1); and (3) causing Pilcher's death by the use and carrying of a firearm during and in relation to a crime of violence or a drug-trafficking crime, *id.* § 924(c)(1), (j).  The government seeks the death penalty.

The district court severed Young's trial from other defendants' and granted his motion to empanel two juries (the first selected for the guilt phase and the second selected for the potential sentencing phase).  *United States v. Young*, 376 F. Supp. 2d 787, 800 (M.D. Tenn. 2005).  After we vacated the district court's bifurcated-jury decision, *United States v. Young*, 424 F.3d 499 (6th Cir. 2005), jury selection began on October 24, 2005.  When the government supplemented its pretrial witness list, Young moved to "preclude the new witnesses."  On January 6 and 27, 2006, the district court ordered the newly discovered witnesses excluded.[1]  On February 2, 2006 (three-and-a-half months later), voir dire ended.  This interlocutory appeal prompted the court to postpone final jury selection.  18 U.S.C. § 3731.

Though the appellate issue concerns the district court's choice of remedy for the government's late-noticed witnesses, we first discuss the government's proposed proof as background that informed the district court's exercise of discretion.  In presenting its case-in-chief, the government planned to link Pilcher's murder to Young's involvement in the Rollin' 90s Crips drug-distribution conspiracy and his enforcer role therein by showing that, in addition to killing Pilcher, Young used violence to collect drug debts, including restraining Lawrence Washington and burning him with a butter knife, dismembering Wallace Davis's dog, and beating and sodomizing Troy Rogers.  According to the government, one of the newly discovered witnesses, Mary Roschelle Walker, can testify to seeing Young leave the murder scene.  The other eighteen new witnesses can provide evidence relating to the assault on Rogers.  The district court understood that, through this new evidence, the government hoped to bolster its proof of Young's involvement in the drug-

---

[1]The district court's January 6, 2006, order excluded the nineteen witnesses.  JA 507–11.  After the government moved for clarification and reconsideration, the district court issued the January 27, 2006, order, denying reconsideration but clarifying the exclusion.  JA 546–48.

distribution conspiracy and Pilcher's death, rebut any claim of duress, and establish as a non-statutory aggravating factor Young's future dangerousness.

### B.  The Pilcher Homicide

The government alerted the district court that it planned to introduce the following evidence at trial: Young (1) anticipated receiving either a kilogram of cocaine or $20,000 for killing Pilcher, (2) went to an Oklahoma City drug house run by Wallace Davis for that purpose, and (3) killed Pilcher by tying him up, stabbing him, and shooting him.  Government's Br. at 7.

Cornelius Humphrey, Coy Baird, and Lawrence Washington were present at the shooting. After the shooting, police questioned numerous bystanders who reported hearing gunshots and seeing two people (later identified as Humphrey and Baird) leave the scene.  Police arrested Humphrey and Baird, who both then identified Young as the shooter.  Humphrey and Baird are now government witnesses.  Federal officials did not independently question the bystanders during their later investigation, however, thinking that, because none had reported seeing Young leave the scene, their testimony would only provide context for Humphrey's and Baird's more specific recollections.

A few weeks later, police arrested Young in Los Angeles on an Oklahoma murder warrant. While in state custody, he allegedly confessed to another inmate that he killed Pilcher, and also that he had previously tortured Lawrence Washington by burning him with a butter knife and dismembered Wallace Davis's dog to collect on a drug debt.  A grand jury eventually indicted Young on the federal charges, and the government transferred him to the Middle District of Tennessee.

### C.  The Discovery of Mary Roschelle Walker

On October 9, 2005, the prosecution, as required by 18 U.S.C. § 3432, provided Young with a list of the names and addresses of 151 potential trial witnesses.  During final trial preparations, federal prosecutors and Los Angeles police detective George Leiker (who was heavily involved in the Rollin' 90s investigation) traveled from Nashville to Oklahoma City to serve trial subpoenas and prepare the bystanders to testify.  During these final interviews, two previously questioned bystanders disclosed information that pointed the government to a new eyewitness.  On October 8, bystander Mary Judy said someone—perhaps named "Rosalyn"—told her that she saw the shooter flee the murder scene.[2]  Then, on October 18, bystander Dianne Jenkins said that someone told her "Rochelle" had seen the killer leave the crime scene.  Jenkins said she knew Rochelle because she had previously helped her treat Lawrence Washington's burns (after Young allegedly tortured him). Jenkins added that Rochelle was related to a "Richardson" family and had been married to "Walter Walker."  The next day, Jenkins identified a picture of Mary Roschelle Walker.

On October 28, the prosecutors and Leiker returned to Oklahoma City, found Mary Walker days later, and interviewed her.  Confirming what Judy and Jenkins had said, Walker told them she was with her husband, Walter Walker,[3] in a car on the day of the shooting when they heard gunshots and saw Young walking away from the house.  She recognized Young because of their repeated contact at a drug house that Young paid her to clean.  She also confirmed that she had helped treat

---

[2]Detective Leiker ran database searches for possible matches and faxed the results to defense counsel the morning of October 9 (though none turned out to be the witness).

[3]Walter Walker, who called 911 to report the shots fired, lived in the garage behind the crime scene.  Although police interviewed him after the shooting, he did not disclose that he was with Mary Walker.  Walter Walker has since passed away.

Washington's injuries. The next day, on October 31, the government provided Young with a supplemental witness list that included Mary Walker.

### D. The Discovery of Troy Rogers and Seventeen Other Witnesses

Also during final trial preparation, the government met with Cornelius Humphrey to go over his testimony. By now—October 19, 2005—Humphrey had been interviewed four previous times, had testified before the grand jury, and had been told to reveal everything he knew about the Rollin' 90s Crips drug conspiracy. Nevertheless, at this fifth interview he disclosed for the first time that in Oklahoma City he had seen Young and others severely beat a man, known to him only as "Mr. T," and sodomize him with a broom handle.

Armed with that new information, the government contacted local police, but no one at the department could identify Mr. T. When the prosecutors and Leiker returned to Oklahoma City on October 28, however, they reviewed police records showing that Troy Rogers, a/k/a Mr. T, reported being the victim of an assault and named "Lil' Peso" as his assailant. The prosecution team found and interviewed Rogers the next day, and he confirmed that Young had severely beaten him for a drug debt. The prosecution located police photographs and hospital records documenting Rogers's injuries, and, from the police file on Rogers's assault, discovered seventeen new witnesses, including hospital staff.

The government's October 31, 2005, supplemental list included Rogers and the other new witnesses, many of whom had not yet been located or interviewed. Soon thereafter, the government provided Young with relevant copies of police reports, photographs, hospital records, and notes that explained the origin of and purpose to be served by the additional witnesses.

### E. Young's Motion to Preclude the New Evidence

On November 4, 2005, Young moved to preclude evidence of Rogers's assault, including the nineteen witnesses' testimony (although Mary Walker does not represent an assault witness), and moved alternatively to adjourn jury selection to allow the defense time to investigate. This motion focused on the burden of investigating the new allegation, asserting that the late disclosure violated Young's constitutional rights by compromising his ability to defend himself. Specifically, Young argued that the evidence to be introduced through the new witnesses would impermissibly amend the government's death penalty notice, as the government would use this evidence as a non-statutory aggravating factor to justify a death sentence.

The next day the government responded, saying that the new evidence only represented direct evidence of the charged offenses. The death penalty notice filed, said the government, already included an allegation that Young committed acts of violence, including other violent acts as described in the Fifth Superseding Indictment. Because the Fifth Superseding Indictment alleged that Young and others committed violent acts including using and carrying firearms to collect drug debts and to assault, abduct, and kill other persons, the government argued that the new evidence did not amend, but rather supported, the existing allegations. As for the concern about investigating Rogers's assault, the government argued to the court that the discovery it was providing to Young minimized the need for investigative methods different than those required for any other type of evidence. The response detailed the trial preparation interviews that unearthed the new evidence, and the government's diligent pursuit of substantiation, as well as prompt transmittal of all relevant information to the defense (totaling thirty pages and including a typed report and notes from Rogers's interview, photographs, police reports, and Rogers's criminal record). The response also alerted the court to the government's intent to transmit witness statements, witness addresses, and hospital records to Young.

The district court scheduled a hearing and asked the parties to argue the applicability of 18 U.S.C. § 3432, though neither party's argument cited the statute, let alone argued its application. On January 6, 2006, the district court entered an order granting Young's motion to exclude the nineteen witnesses' testimony, reasoning that the government had violated § 3432 by not disclosing the supplemental witness list prior to the start of trial. The court noted that "[t]he purpose of this section is to enable a capital defendant to prepare to face the testimony against him." JA 508. It then rejected the government's argument that a trial does not begin until the jury is sworn, and held that "trial for purposes of § 3432 begins at the start of jury selection." JA 509. The court found exclusion the proper remedy because "the rights of defendants in capital cases are important and to be protected," and because the government was negligent in failing to interview Cornelius Humphrey more thoroughly at an earlier opportunity. JA 510–11.

The government moved for reconsideration and clarification, asking specifically whether it could call the nineteen excluded witnesses (1) in rebuttal or to rebut any claim of duress, (2) to establish a good-faith basis for cross-examination of witnesses, or (3) to establish non-statutory aggravating factors. On January 27, 2006, the district court denied reconsideration, but clarified its previous order by holding that (1) the excluded witnesses may appropriately be used in rebuttal, (2) it would determine at trial whether the Rogers assault may be referred to on cross-examination, and (3) only witnesses who were already on the October 9, 2005, witness list could testify to non-statutory aggravating factors. JA 547–48. Here again the court rested its ruling on the foundation that § 3432 was meant to "enable the Defendant to prepare to meet the evidence to be produced against him by the Government." JA 548.

## II.

### A.  Standard of Review

We review decisions regarding the exclusion of evidence for an abuse of discretion. *E.g.*, *United States v. Middleton*, 246 F.3d 825, 838 (6th Cir. 2001); *United States v. Tocco*, 200 F.3d 401, 414 (6th Cir. 2000); *United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993). And "any error of law in the district court's application of § 3432 would constitute an abuse of discretion." *United States v. Fulks*, 454 F.3d 410, 422 (4th Cir. 2006); *see also United States v. Heavrin*, 330 F.3d 723, 727 (6th Cir. 2003) ("An abuse of discretion occurs when the lower court relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." (quoting *United States v. True*, 250 F.3d 410, 422 n.2 (6th Cir. 2001))). We give fresh review to questions of statutory interpretation. *United States v. Morris*, 203 F.3d 423, 424 (6th Cir. 2000); *see United States v. Martin*, 378 F.3d 578, 580 (6th Cir. 2004).

### B.  18 U.S.C. § 3432

Section 3432, originally enacted over 200 years ago and rarely cited in circuit cases since, provides that a capital defendant "shall at least three entire days before commencement of trial be furnished with a copy of . . . a list of veniremen, and of the witnesses to be produced on the trial."

### C.   Commencement of Trial

The government first asserts that the district court erred in concluding that the start of jury selection commenced trial for purposes of § 3432. *Cf. Gomez v. United States*, 490 U.S. 858, 872–73 (1989) (indicating that a trial commences at different stages depending on the rights at stake). It relies on two nineteenth-century cases interpreting an earlier version of § 3432 and holding that "trial does not begin until the jury is completed and sworn." *United States v. Neverson*, 12 D.C. (1 Mackey) 152 (D.C. 1880); *see also United States v. Curtis*, 25 F. Cas. 726 (C.C.D. Mass. 1826) (No. 14905) (same).

The district court disagreed, looking instead to *United States v. O'Driscoll*, 229 F. Supp. 2d 370 (M.D. Pa. 2002). In determining that trial for purposes of § 3432 begins when "potential jurors appear in court and are sworn," the *O'Driscoll* court first tracked the provision's history. *Id.* at 372–73. The court noted that both the *Neverson* and *Curtis* courts interpreted a version of § 3432 that required production of not only witnesses, but also "a list of the jury," but that in 1948 Congress changed the term "jury" to "veniremen." *Id.* at 372. The court found that change significant, observing that "[t]he purpose of providing a list of veniremen is to provide defense counsel an opportunity to prepare adequately for *jury selection*." *Id.* at 373 (emphasis added). Stated differently, of what use would a list of potential jurors be after jury selection was complete? To shore up its conclusion that trial commences under § 3432 with jury selection, the court then identified four other provisions using language similar to "before commencement of trial," and noted that courts construing that language elsewhere had also held that trial commences with jury selection. *Id.* at 373–74 (identifying Fed. R. Crim. P. 43; 21 U.S.C. § 851(a)(1); the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*; and the federal criminal removal statute, 28 U.S.C. § 1446(c)(1)).

The *O'Driscoll* court's reasoning and the obvious importance of voir dire to litigants' trial strategy persuades us to agree with the district court that, for purposes of § 3432, trial begins with the start of jury selection. The government's October 31, 2005, supplemental witness list thus runs afoul of § 3432.

## D. Factors Bearing on the Exclusion of After-Discovered Witnesses

### 1.

That said, the government argues that even if its supplemental list was not timely under § 3432, the district court's exclusion of the witnesses constitutes an abuse of discretion. The statute itself is silent on whether the government may present the testimony of after-discovered witnesses, and this circuit has yet to wrestle with the remedial consequences of such a violation.

As a general matter, where a statute does not specifically provide for the exclusion of evidence in the event of a violation, federal courts disfavor exclusion as a judicially-fashioned remedy. *See United States v. Abdi*, 463 F.3d 547, 556 (6th Cir. 2006) ("[T]here is no exclusionary rule generally applicable to statutory violations." (collecting cases)). Sound policy supports its disfavor, and the Supreme Court has "repeatedly emphasized that the [exclusionary] rule's 'costly toll' upon truth-seeking and law enforcement objectives presents a high obstacle for those urging application of the rule." *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 364–65 (1998); *see also Hudson v. Michigan*, 547 U.S. 586, 591 (2006) ("Suppression of evidence . . . has always been our last resort, not our first impulse."). Given exclusion's high cost, federal courts invoke it only where its "'remedial objectives are thought most efficaciously served.'" *United States v. Leon*, 468 U.S. 897, 908 (1984) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). "[D]eter[ring] constitutional violations" best serves exclusion's remedial objectives. *Sanchez-Llamas v. Oregon*, 126 S. Ct. 2669, 2680 (2006) (noting a particular emphasis on Fourth Amendment violations). Indeed, the few suppression cases focused on statutory violations "implicated important Fourth and Fifth Amendment interests." *Id.* at 2681.

Despite courts' general aversion to exclusion, § 3432 declares capital trial procedure. *See Logan v. United States*, 144 U.S. 263, 303–04 (1892), *abrogated on other grounds by Witherspoon v. Illinois*, 391 U.S. 510, 523 n.22 (1968); *cf. Murray v. Giarrantano*, 492 U.S. 1, 21 n.9 (1989) (Stevens, J., dissenting) (collecting cases that recognize the need for heightened protections in capital cases); *Ford v. Wainwright*, 477 U.S. 399, 411 (1986) (Marshall, J., plurality opinion) ("[D]eath is different."). Section 3432 serves "to inform the defendant of the testimony which he will have to meet, and to enable him to prepare his defense." *Logan*, 144 U.S. at 304. In other words, it "is designed to prevent trial by ambush where a defendant's life is at stake." *Fulks*, 454

F.3d at 422. Given this weighty interest, as the Supreme Court explained over a century ago, the section "is not directory only, but mandatory to the government," and "the trial cannot lawfully proceed until the requirement has been complied with." *Logan*, 144 U.S. at 304. For this reason, appellate courts consistently hold that the government's failure to provide a witness list to a capital defendant is reversible error. *Fulks*, 454 F.3d at 422 (collecting cases).

What is at stake here is an appropriate remedy for violation of the statute by supplementing a timely presented list with late-discovered witnesses. The ancient *Logan* Court first speculated about the possibility that "particular witnesses, afterwards coming to the knowledge of the government, or becoming necessary by reason of unexpected developments at the trial, might be permitted, on special reasons shown, and at the discretion of the court, to testify in the case." 144 U.S. at 306. And in *Fulks*, the Fourth Circuit thoroughly analyzed post-*Logan* case law and found that "virtually every court to have directly addressed the question of after-discovered witnesses has determined that § 3432 does not categorically preclude such witnesses from testifying at trial." 454 F.3d at 423.[4]

With § 3432's focus being protection of the capital defendant's weighty interest in avoiding trial by surprise, courts look to balance that interest with the equally valid public interest in courts' truth-seeking function. Distilling pertinent cases, *Fulks* identified three factors to be balanced by a trial court in deciding whether to exclude after-discovered-witness testimony: (1) the government's good faith, *id.* at 423 (citing *United States v. Rosenburg*, 195 F.2d 583, 599–600 (2d Cir. 1952)); (2) the government's diligence in pretrial investigations, *id.* ("[T]he prosecution may not present an after-discovered witness at trial if its failure to discover the witness prior to the expiration of the deadline established in § 3432 was due to a lack of reasonable diligence in conducting its pretrial investigation."); and (3) any prejudice to the defendant caused by unfair surprise that could not be cured by brief adjournment, *id.* at 424.

The dissent disagrees with our balancing analysis here, but when the government fails to comply with § 3432, requiring the district court to fashion an appropriate remedy, this much is clear: the statute's purpose is "to inform the defendant of the testimony which he will have to meet, and to enable him to prepare his defense." *Id.*; *see also United States v. Greene*, 497 F.2d 1068, 1082 (7th Cir. 1974). Although "[s]ection 3432 is not a forgiving statute," and courts recognize it "does not excuse sloppiness," *United States v. Fernandez*, 172 F. Supp. 2d 1265, 1280 (C.D. Cal. 2001), or bad-faith omissions, *Fulks*, 454 F.3d at 423, a sanction less severe than the disfavored remedy of exclusion will often provide a capital defendant with the full protection that § 3432 intended. Occasionally it may not, and our reading acknowledges that even absent prosecutorial abuses, "in certain situations, permitting a trial witness not included on the prosecution's witness list to testify against the defendant will undermine [§ 3432's] statutory purpose," *Fulks*, 454 F.3d at 423–24. Such a district court decision would be reviewed for an abuse of discretion.

The dissenting view goes much further, fashioning a rule that after-discovered witnesses are presumed inadmissible unless the government establishes diligence and good faith, and "[e]ven then, the discretion to apply such an exemption lies solely within the province of trial courts." *Infra* at 12. We agree that district courts exercise discretion over decisions regarding the admissibility of evidence. We do not agree, however, with the peculiar suggestion that a trial judge's decision to

---

[4]Citing *United States v. Greene*, 497 F.2d 1068, 1082 (7th Cir. 1974); *United States v. Rosenburg*, 195 F.2d 583, 599–600 (2d Cir. 1952); *United States v. Fernandez*, 172 F. Supp. 2d 1265, 1279–80 (C.D. Cal. 2001); *United States v. Gregory*, 266 F. Supp. 484, 487 (D.D.C. 1967); *cf. United States v. Chandler*, 996 F.2d 1073, 1098–99 (11th Cir. 1993) (finding no plain error from violation of § 3432). The *Fulks* court found the only contrary decision to be *Neverson*, but noted that *Neverson* was later abrogated by *United States v. Schneider*, 21 D.C. (Tuck. & Cl.) 381, 412 (D.C. 1893).

exclude after-discovered witnesses on § 3432 grounds is somehow insulated from review, while its decision to admit such evidence is not.

2.

Against this backdrop, we return to the government's argument that the district court abused its discretion in excluding the nineteen after-discovered witnesses. In its order, the district court did not find—and Young does not argue—that the government's failure to include the nineteen after-discovered witnesses was in bad faith. The district court did, however, take issue with the government's diligence.

Specifically, the court found that the government's claim of best efforts was "not credible" because the case had been pending for six years, no evidence showed Humphrey was uncooperative, and the government could have done a more thorough job of questioning him in prior interviews. In the absence of a credible best-efforts defense, it decided the violation of the three-day notice warranted exclusion. JA 510. We do not read the court's "not credible" observation as assessing credibility in the sense of truthfulness; rather, it appears to reflect the court's rejection of the government's claim that it could not have earlier discovered this evidence. With that viewpoint, the court labeled the government's tardiness as "excusable negligence." JA 510 (citing *Fernandez*, 172 F. Supp. 2d at 1278).

Yet other cases analyze whether the government exercised reasonable diligence in conducting its investigation without tipping the scale with the benefit of hindsight. In *Fulks*, for example, the government learned during an interview with a witness scheduled to testify the next day that the defendant had, two years earlier, placed an incriminating phone call to the witness's mother. 454 F.3d at 419. And this witness interview occurred nearly a month after voir dire ended and ten days after the prosecutor's opening statement. *Id.* In affirming the district court's decision to allow the new witnesses (the mother and the agent who investigated the call), the *Fulks* court determined that the government should not be faulted for failing to interview the witness before trial. The court noted that the witness leading to the mother and agent was a minor figure who the government believed would provide only collateral testimony—that is, "the prosecution had no reason to believe that the [witness] had any useful information to offer." *Id.* at 425. The impracticality of interviewing that witness, located a "considerable distance" from the court, also figured in the court's judgment, as did the case's complexity—"the crime spree spanned several states and touched over a hundred individuals the prosecution expected to call as witnesses." *Id.*

In *Gregory v. United States*, 410 F.2d 1016 (D.C. Cir. 1969), the government did not learn of a new witness until testimony at the defendant's third trial for the same offense revealed a new person with relevant information. When the government sought to call the new witness, the court granted a continuance, after which the defense argued that it had inadequate time for a full investigation. *Id.* at 1019. The court found the government diligent in locating the new witness, despite the fact that the person revealing his name had "vaguely mentioned [the additional witness] . . . at various times." *Id.*

Discounting *Gregory* and *Fulks*, the district court here relied on a district court opinion that excluded evidence from two after-discovered witnesses. *Fernandez*, 172 F. Supp. 2d at 1278. But *Fernandez* does not align well with this case because that prosecution team had the benefit of two leads that would have permitted timely disclosure. Although the court excused the failure to capitalize on the weaker lead, when combined with a subsequent lead from another witness who provided a "clear, detailed, unequivocal" statement with "many significant details," the court found that the government failed to exercise reasonable diligence. *Id.*

3.

The facts here show the district court's conclusion faulting the government's diligence to be an abuse of discretion on three grounds. First, Young's trial grew from a highly complex investigation. Second, rejection of Mary Walker's testimony (on a subject different from the Rogers assault) went unexplained by the district court. Third, as regards the remaining eighteen witnesses who were to testify about the Rogers assault, the facts belie the district court's stance on the government's diligence here.

*Complexity*. The federal investigation here involved interviews of more than 200 individuals and coordination with law enforcement agencies in several states—circumstances even more complex than those recounted in *Fulks*. *See Fulks*, 454 F.3d at 425; *see also* JA 303 (stipulating to investigation's massive scale).

*Witness Mary Walker*. This witness was to testify about seeing Young leave the murder scene, not about the assault on Rogers, yet the district court's rationale for excluding the nineteen witnesses failed to separately account for these distinctions. The government's proffering Mary Walker's name on the supplemental list came about through circumstances wholly different from the other eighteen witnesses concerning the assault of Troy Rogers. Evaluation of the government's diligence as to naming her outside the three-day deadline should have looked to whether the government's reliance on police reports of bystander-interviews rather than face-to-face interviews was reasonable given (1) the considerable distance between Oklahoma City and Nashville (the trial venue), and (2) the expected minor role of these witnesses (just setting the stage for Humphrey's and Baird's eyewitness testimony). *Fulks*, 454 F.3d at 425. The district court did not explain how the government's efforts to discover Mary Walker fell short, especially given that Walter Walker (though twice interviewed by police) never mentioned Mary Walker's presence, no other bystander mentioned her presence, and only when the prosecution traveled to Oklahoma City did two bystanders reveal the new information that the government then pursued to locate Mary days later.

The district court abused its discretion in excluding Mary Walker's testimony as the reasoning applicable to excluding the other eighteen witnesses did not apply to her differing circumstances. When the government in its motion for clarification and reconsideration alerted the district court to this mischaracterization of Mary Walker's discovery, JA 517, the court denied the government's motion to reconsider without clarifying this point, JA 546. The district court's failure to specify how the prosecution's efforts to discover Mary Walker fell short does not "in and of itself warrant[] reversal," *infra* at 13, but strengthens our "definite and firm conviction that the [district] court . . . committed a clear error of judgment in the conclusion it reached." *United States v. Dixon*, 413 F.3d 540, 544 (6th Cir. 2005) (quoting *United States v. Wagner*, 382 F.3d 598, 616 (6th Cir. 2004)).

*The Other Eighteen Witnesses.* As for the remaining eighteen witnesses, we reject as an abuse of discretion the district court's assessment that a reasonable investigation would have turned up the Rogers assault earlier. The district court reasoned (consistent with Young's argument) that, since the government did not draw the assault information from Humphrey through four prior interviews, those interviews lacked the thoroughness of the pretrial interview. Yet the record as a whole counters the court's assumption. After all, the government put Humphrey through four successive interviews, Detective Leiker required him in at least one of those interviews to reveal everything he knew about the conspiracy, and Humphrey testified before a grand jury. The court counted the absence of evidence of non-cooperation by Humphrey as a strike against the government's claim of diligence. The passage of time, the number of interviews, and Humphrey's cooperation are relevant, but no one disputes that he nevertheless failed to disclose the tangential matter of Rogers's assault until late in the process, despite queries meant to elicit such information. *Gregory*, 410 F.2d at 1019 (noting that the government cannot probe a reticent witness about an

event it does not know exists). And when the fifth interview produced this information, a reasonable assessment required crediting the government's diligent pursuit of evidence to back it up. Indeed, within two weeks the government provided Young with the witnesses' names and relevant information discovered from Humphrey's pretrial interview. Contrary to the district court's conclusion, this case is not analogous to *Fernandez*, where the government was negligent when it simply failed to pursue a promising lead. We thus determine that the district court abused its discretion in labeling as negligent the government's failure to discover the Rogers assault earlier.

The district court's reliance on *Fernandez* is misplaced for another reason. It cited the case for the proposition that "excusable negligence is not sufficient to permit the Government to add witnesses not on the witness list after the start of trial," but *Fernandez* in fact concluded that the government's failure to locate after-discovered witnesses "appears to be a simple mistake, but *considering all the circumstances* it is a mistake due to a lack of diligence and is *not* excusable." 172 F. Supp. 2d at 1278 (emphases added). Moreover, despite finding that the government had not exercised reasonable diligence, the *Fernandez* court went on to consider the impact of the new testimony on the defendants. *Id.* at 1280. Weighing "the rights of defendants in capital cases" with "the truth-finding function of our court system," and despite the government's lack of diligence, the court found partial exclusion the proper remedy. *Id.* at 1281.

4.

Although the government acted in good faith and conducted a reasonably diligent investigation, exclusion would be proper upon a showing of irreparable prejudice by Young. *Fulks*, 454 F.3d at 424. Because the district court never reached this issue, and because it is in the best position to consider this claim in the first instance, we remand for consideration of whether Young can establish that these late additions will irreparably harm his defense. *See United States v. Tipton*, 90 F.3d 861, 889 (4th Cir. 1996) (defendant's burden to show actual prejudice from tardily disclosed witnesses).

On remand the court should assess whether allowing the after-discovered witnesses' testimony would frustrate § 3432's purpose "to inform the defendant of the testimony which he will have to meet, and to enable him to prepare his defense." *Logan*, 144 U.S. at 304. It is at this step—prejudice to the defendant without fault of the government—that courts look to adjournment as a remedial alternative to excluding evidence. If a defendant can establish actual prejudice through unfair surprise, "a trial court should first consider whether a brief adjournment to allow the defendant to meet the witness's testimony would eliminate the prejudice caused by the surprise." *Fulks*, 454 F.3d at 424 (citing *Tipton*, 90 F.3d at 889). In making this assessment, the court should consider only that prejudice resulting from a lack of notice, rather than any prejudice caused by the strength and nature of the after-discovered witness's testimony. *Id.* And only if brief adjournment would not cure the defendant's prejudice should the court preclude the witnesses from testifying. *Id.*; *see also Fernandez*, 172 F. Supp. 2d at 1280–81 (excluding *aspects* of newly-discovered-witness testimony).

III.

We hold that the district court abused its discretion in choosing to exclude the relevant testimony in the absence of discovery abuses or bad faith on the part of the government. We therefore vacate the district court's order and remand for proceedings consistent with this opinion.

———————————

**DISSENT**

———————————

R. GUY COLE, JR., Circuit Judge, dissenting. Under 18 U.S.C. § 3432, the prosecution was obliged to give Donnell Young a complete witness list at least three days before voir dire began, so that Young—a man faced with the penalty of execution—could avoid "trial by ambush." *United States v. Fulks*, 454 F.3d 410, 422 (4th Cir. 2006). Yet, through what the district court found to be negligence, the prosecution failed to comply with this simple, but plainly mandatory directive. The question we face on appeal is whether the district court, the very same court that has presided over this vast, complex drug conspiracy since 1998 and accepted the guilty pleas of multiple other co-conspirators, committed a clear error of judgment in finding that the prosecution did not exercise reasonable diligence in producing nineteen after-discovered witnesses. Because I believe the answer is no, I respectfully dissent.

**I.**

First, I take issue with the majority's view that a district court may abuse its discretion when it decides to remedy a violation of § 3432 by excluding after-discovered witnesses from testifying at trial. Section 3432 provides, in no uncertain terms, that: "A person charged with treason or other capital offense shall at least three days before the commencement of trial be furnished with a copy . . . of the witnesses to be produced on the trial for proving the indictment . . . ." 18 U.S.C. § 3432. Despite this clear language, the majority would find that witnesses not disclosed in the pretrial notice *must* be allowed to testify at trial, so long as the prosecution demonstrates good faith and reasonable diligence, and if the defendant cannot demonstrate "irreparable prejudice." Maj. Op. at 10.

But Congress has amended § 3432 twice, once in 1948 and again in 1994, and the text of the statute still provides for only one exception to this notice requirement: when listing the witness's name would "jeopardize the life or safety of any person." 18 U.S.C. § 3432. And as the Supreme Court recognized over a century ago, "[t]he words of the existing statute are too plain to be misunderstood. . . . The provision is not directory only, but mandatory to the government; and its purpose is to inform the defendant of the testimony which he will have to meet, and to enable him to prepare his defense." *Logan v. United States*, 144 U.S. 263, 304 (1892).

True, the statute does not state, in explicit terms, that after-discovered witnesses must be excluded from testifying at trial. And I recognize that many courts have established special circumstances for when a district court *may*, in its discretion, allow witness testimony despite the prosecution's non-compliance with § 3432. *See, e.g., Fulks*, 454 F.3d at 424; *but see id.* at 438-41 (Williams, J., concurring) (finding that the statute precludes any judicially created exceptions). But the majority goes farther by requiring "courts [] to balance [a defendant's interest in avoiding trial by surprise] with the equally valid public interest in courts' truth-seeking function," Maj. Op. at 7, which assumes the burden should be shared equally between the parties.

The problem is that "Congress's concern in passing [§ 3432] was with allowing defendants facing possible sentences of death sufficiently to prepare their defense, regardless of whether the statute precluded the Government from introducing some relevant testimony." *Fulks*, 454 F.3d at 439. Indeed, in *Logan*, the only case in which the Supreme Court has spoken as to the scope of this statute, the Court found that "particular witnesses, afterwards coming to the knowledge of the government, . . . might be permitted on *special* reasons shown, and at the *discretion* of the court, to testify in the case." *Logan*, 144 U.S. at 306 (emphasis added). And in *Fulks*, upon which the majority so heavily relies, the Fourth Circuit described § 3432 as "impos[ing] no per se bar against

testimony from witnesses discovered after the prosecution's witness list is due," 454 F.3d at 423, but concluded that such witnesses "should *only* be permitted to testify . . . when the prosecution has demonstrated that its failure to include the witnesses on the list was in good faith and not the result of a lack of diligent investigation," *id.* at 424 (emphasis added). "*Even then*," the court noted, "if the defendant can demonstrate actual prejudice . . . , the trial court should preclude the witness from testifying unless a brief adjournment of the trial would cure the prejudice." *Id.* (emphasis added).

Therefore, I believe the proper approach is to assume the following: (1) that after-discovered witnesses may be admitted only in a narrow, rare set of cases, and (2) that the decision to do so is left to the discretion of the trial court. In other words, there should be no "balancing test," nor should the burden be shared equally between the parties; courts should presume that the after-discovered witnesses are not allowed unless the government shows by clear and convincing evidence that it acted in good faith and that it exercised reasonable diligence in its investigation. *Fulks*, 454 F.3d at 424. Even then, the discretion to apply such an exemption lies solely within the province of the trial courts. *Logan*, 144 U.S. at 306. Such an approach accords trial courts their due deference, but also recognizes that "Section 3432 is not a forgiving statute," *United States v. Fernandez*, 172 F. Supp. 2d 1265, 1280 (C.D. Cal. 2001), and gives full effect to the statute's intended purpose: "to inform the defendant of the testimony which he will have to meet, and to enable him to prepare his defense," *Logan*, 144 U.S. at 304.

The result of the majority's contrary position—that the remedy must balance equally the rights of both the capital defendant and the government—is that a district court now *must* allow previously undisclosed witnesses to testify at trial if it decides that the government's interest in providing the testimony somehow outweighs the defendant's interest in excluding it.[1] But this interpretation waters down the protection afforded by § 3432 by merely applying to capital cases the discovery standards accorded to non-capital cases. Under the Federal Rules of Criminal Procedure, a trial court may impose a number of sanctions on the prosecution for failing to meet its discovery obligations, including the granting of a continuance, the exclusion of the undisclosed evidence, or the granting any other remedy "that is just under the circumstances." Fed. R. Crim. P. 16(d)(2). In considering whether suppression of evidence is an appropriate remedy, the court is to balance a number of factors: "(1) the reasons for the government's delay in producing the materials, including whether it acted intentionally or in bad faith; (2) the degree of prejudice, if any, to the defendant; and (3) whether the prejudice to the defendant can be cured with a less severe course of action, such as granting a continuance or a recess." *United States v. Maples*, 60 F.3d 244, 247 (6th Cir. 1995). These factors, no doubt, sound strikingly familiar to the ones adopted by the majority. But I do not believe Congress meant for courts of appeals to balance a multitude of judicially created factors—the same factors used in non-capital cases—to determine whether a district court

---

[1] I should note that we are the first court of appeals since the statute's enactment by the First Congress in 1790 to reverse a district court's decision to remedy a clear violation of § 3432 with the exclusion of after-discovered witnesses. Many cases hold that a district court does not abuse its discretion when it decides to allow witness testimony despite non-compliance with § 3432. *See, e.g.*, *Fulks*, 454 F.3d at 424-27 (affirming district court's decision to admit witnesses on narrow grounds); *United States v. Chandler*, 996 F.2d 1073, 1099 (11th Cir. 1993) (affirming a district court's decision to admit a police officer's testimony); *United States v. Greene*, 497 F.2d 1068, 1082 (7th Cir. 1974) (affirming a district court's decision to admit expert witness testimony). Many other cases hold that failure to comply with § 3432 constitutes reversible error. *See, e.g.*, *United States v. Crowell*, 442 F.2d 346, 347-48 (5th Cir. 1971) ("Section 3432 is mandatory, and a defendant indicted for a capital offense must be given the benefits of its provisions, . . . and the failure to allow defendant its benefits would be plain error."); *Hall v. United States*, 410 F.2d 653, 660 (4th Cir. 1969) (stating that failure to comply with § 3432 is reversible error); *Amsler v. United States*, 381 F.2d 37, 45 (9th Cir. 1967) (reversing district court's decision to admit witnesses in violation of § 3432); *Fernandez*, 172 F. Supp. 2d at 1280 (stating that "Section 3432 is not a forgiving statute," and that it "does not excuse sloppiness or negligence on the part of the government," and excluding the witnesses' testimony). To my knowledge, no case holds that a district court abuses its discretion by remedying a violation of § 3432 with the exclusion of after-discovered witnesses.

committed a clear error of judgment in following the plain language of a statute intended to give capital defendants heightened discovery protection.

## II.

I also disagree with the majority's holding that the district court abused its discretion in finding that the prosecution failed to exercise reasonable diligence in its investigation. The prosecution provided its first witness list to Young on October 9, 2005, identifying one hundred and fifty-one individuals to be called to testify. Over the next two days, the prosecution provided the names of fifteen additional witnesses, for a grand total of one hundred and sixty-six witnesses. Then, twenty days later, and after the start of voir dire, the prosecution attempted to provide the names, but no addresses, for an additional nineteen witnesses, most of whom were identified as a result of an apparent eleventh-hour interview of Cornelius Humphrey.

Notwithstanding the prosecution's assertion that "it could not have known about this incident or the witnesses before the interview," the district court found the prosecution's claim to be "not credible." As an initial matter, it bears noting the obvious: that the district court is in "the best position to evaluate a party's pre-trial diligence," *Fulks*, 454 F.3d at 424, which applies with particular force to the instant case. *See also Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 142 (1997) ("'[C]ases arise where it is very much a matter of discretion with the court whether to receive or exclude the evidence; but the appellate court will not reverse in such a case, unless the ruling is manifestly erroneous.'") (quoting *Spring Co. v. Edgar*, 99 U.S. 645, 658 (1879)).

What is most surprising, or perhaps disturbing, is the majority's willingness to substitute its view of "reasonably diligent" for that of the district court's. The same court has presided over the entire conspiracy since 1998, has accepted the guilty pleas of many other co-conspirators, and no doubt has intimate knowledge of the ongoing investigation. According the proper level of deference, I believe that the exclusion of Mary Walker and the eighteen other after-discovered witnesses was proper, and that the complexity of the investigation offers no recourse to the Government.

*Mary Walker.* The prosecution's failure over a span of seven years to conduct follow-up interviews of the bystanders to the murder, many of whom knew the existence of Mary Walker, displays a lack of reasonable diligence. The two witnesses who identified Walker after the start of voir dire, Mary Judy and Dianne Jenkins, both resided in Oklahoma City near the drug house itself and were known and available to federal investigators. But, for some reason, in the seven years since the filing of the indictment in federal court, the prosecution never interviewed the bystanders or neighbors near the murder scene, choosing instead to rely upon interviews conducted by the Oklahoma City Police Department immediately after the murder. I have my doubts as to whether this is standard investigative procedure. Regardless, it is certainly reasonable for us to believe that a diligent investigation would have produced Walker at some point prior to the eve of trial.

True, the district court's order focused on the eighteen witnesses discovered from Humphrey, and did not specifically explain how the prosecution's efforts to discover Walker fell short. But I disagree with the majority that this in and of itself warrants reversal. For one, the exact same reasons that the district court gave for excluding the other eighteen witnesses apply equally to Walker—namely, that the case had been pending for over seven years, that the prosecution had "ample opportunity" to interview the witnesses prior to trial, that there was no evidence that the witnesses were uncooperative, and that all the evidence points to the fact that the prosecution simply did not "thoroughly interview" the witnesses. For another, as I have already explained, a district court need not articulate its reasons for complying with a statutory mandate. And the cases that the majority cites, *Fulks* and *Gregory*, do not counsel a different result. Those courts considered whether the district court abused its discretion by *refusing* to apply § 3432, while here, we consider

whether the district court abused its discretion by *applying* § 3432. It is one thing for us to hold that a district court's failure to comply with a statute is a reversible error, but it is quite another for us to hold that a district court's failure to explain why it complied with a congressional mandate constitutes an abuse of discretion.

*The Other Eighteen After-Discovered Witnesses.* The prosecution's failure over a span of seven years to interrogate fully Humphrey as to his knowledge of Young's reputation and prior bad acts displays a lack of reasonable diligence. According to the prosecution's theory, Humphrey is the most important witness linking Young to the murder and drug conspiracy because he was present at the crime scene. Indeed, federal authorities initially charged Humphrey with the murder of Woody Pilcher. For the last decade, Humphrey repeatedly cooperated with authorities while incarcerated in Oklahoma City and while living in Los Angeles, both focal points of the investigation. Now, after five separate interviews by local and federal authorities, the prosecution claims that Humphrey simply failed to reveal the assault on Troy Rogers until his pretrial interview on October 19, 2005.

One view of the foregoing is to take the prosecution at its word: that Humphrey, a central witness who has been available to the prosecution since 1998, and with no evidence of prior uncooperative behavior, failed to provide all the information he knew. Another view is that the prosecution simply failed to interrogate Humphrey adequately. Whether or not we would conclude, on a clean slate, that the prosecution's claim was the more credible one, it is not a clear error of judgment to believe that a diligent investigation should have exposed this particular incident sometime before the start of trial.

*Complexity.* The majority has not explained the relevance of the scope and complexity of the underlying investigation. While this case admittedly involves multiple suspects, crimes, murders, and victims, the focus of the inquiry should be on only one target: Young. Whether the prosecution has spread its resources too thin should not be a means to excuse the requirement that it be diligent in its investigation toward the defendant. Keeping in mind that "Section 3432 is not a forgiving statute," *Fernandez*, 172 F. Supp. 2d at 1280, and the societal interest in giving defendants the greatest degree of protection when their life is at stake, the district court did not abuse its discretion in concluding that the prosecution failed its statutory obligations.[2]

Finally, because I take the view that the district court may exclude an after-discovered witness at trial if the government fails to demonstrate reasonable diligence, it is unnecessary to consider whether Young suffered prejudice, or whether a continuance would have been a more appropriate remedy. *See Fulks*, 454 F.3d at 423 (requiring showing of diligence and good faith before permitting presentation of after-discovered witness); *Fernandez*, 172 F. Supp. 2d at 1280. I only note that, contrary to the Government's position, in the century since *Logan*, the Supreme Court has declined to circumscribe a trial court's discretion in proscribing the remedy for a § 3432 violation. Indeed, there does not appear to be any persuasive judicial authority for the proposition that a continuance is the exclusive option. *See generally Taylor v. Illinois*, 484 U.S. 400, 414 (1988) (holding that the compulsory process clause of the Sixth Amendment permits exclusion of testimony of a defense witness as a sanction for violating a discovery rule because it was "reasonable to presume that there is something suspect about a defense witness who is not identified until after the 11th hour has passed"); *Boardman v. Nat'l Med. Enter.*, 106 F.3d 840, 843 (8th Cir. 1997) ("The power of the trial court to exclude exhibits and witnesses not disclosed in compliance with its discovery and pretrial orders is essential to the judge's control over the case.") (citation and internal quotations omitted); *Conway v. Chem. Leaman Tank Lines, Inc.*, 687 F.2d 108, 112 (5th Cir. 1982)

---

[2]Moreover, the district court was more lenient than it could have been. Although some courts have held three days notice to be sufficient, other courts have required greater notice. *See, e.g.*, *United States v. Tipton*, 90 F.3d 861, 889 (4th Cir. 1996) (district court requiring witness list ten days in advance of trial date).

(While continuances are "generally more appropriate remedy than exclusion of evidence," "[t]he granting or denial of a continuance . . . is a procedural matter of the kind that this Court has repeatedly said is subject to the discretion of the trial judge.").

## III.

Because I would affirm the district court's decision to exclude the after-discovered witnesses, I will address briefly the Government's contention that § 3432 does not apply to witnesses called only to establish non-statutory aggravating factors—specifically, those intended to testify about the torture of Rogers.[3]

Section 3432, by its terms, applies to witnesses to be called "for proving the indictment," 18 U.S.C. § 3432, and most courts have found that non-statutory aggravating factors do not need to be alleged in an indictment. *See United States v. Brown*, 441 F.3d 1330, 1368 (11th Cir. 2006) (collecting cases). Nonetheless, I do not believe that § 3432 is inapplicable to the witnesses in this case. Young is charged with using a firearm to kill Pilcher in furtherance of a continuing criminal enterprise and with the goal to eliminate Pilcher as a potential witness. The Government admits that the evidence relating to the torture of Rogers "demonstrates [Young's] role as an enforcer . . . [and] helps refute his claim of duress as a defense . . . ." (Appellant's Br. 59 n.16.) Accordingly, because the testimony elicited from these eighteen after-discovered witnesses would be used not only to prove non-statutory aggravating factors, but also to prove the crimes alleged in the indictment, the full scope of § 3432 should apply.

And to the extent that the Government now asks us to allow witnesses called to testify about non-statutory aggravating factors, we should also be forced to recognize that the language of § 3432 is mandatory. The statute is no more silent on its application to non-statutory aggravating factors than it is silent on the question of whether after-discovered witnesses may be admissible based on good faith and diligence on the part of the Government. If the statute is, in fact, "too plain to be misunderstood," *Logan*, 144 U.S. at 304, then the proper approach would be to reject judicially created exemptions for good faith, diligence, and prejudice, and exclude after-discovered witnesses regardless of whether the result would be to preclude the Government from introducing relevant evidence.

## IV.

For those reasons, I respectfully dissent.

---

[3] Even if the Government's argument is correct, it would only allow testimony of the eighteen after-discovered witnesses testifying about the alleged torture of Rogers. The eyewitness testimony of Walker would still be excluded.